JAMES McCARTHY & another *vs.* SUPREME LODGE NEW
ENGLAND ORDER OF PROTECTION & others.

Suffolk.   January 29, 1891. — February 26, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, HOLMES, & MORTON, JJ.

*Beneficiary Association* — "*Dependent*" — *Change of Designation.*

A woman engaged to be married, who, at her intended husband's request, leaves
an employment which affords her a comfortable support for one in which her
earnings are insufficient for that purpose, and receives from him a sum each
week to make up the difference, is a person "dependent" upon him, within the
meaning of the St. of 1882, c. 195, § 2, and is entitled to the proceeds of a cer-
tificate of membership in a beneficiary association taken out by him for her
benefit while that statute was in force.

If the by-laws of a beneficiary association point out the mode in which a change in
the designation of beneficiary is to be made, if at all, and that mode is not fol-
lowed, an attempt by a certificate holder to make such a change and to dispose
of the proceeds of his certificate by will is wholly ineffectual.

BILL IN EQUITY, filed on October 4, 1889, by James McCarthy
and Mary McCarthy, against the Supreme Lodge New England
Order of Protection, Sarah J. Judge, and Margaret Quirk, to
secure the proceeds of a certificate of membership issued by the
defendant corporation to John J. McCarthy. At the hearing,
before *Field*, C. J., the following facts appeared in evidence.

The plaintiffs were the parents of John J. McCarthy, and his
only heirs and next of kin ; Margaret Quirk was his sister,
and the executrix and a legatee under his will; and Sarah J.
Judge was the beneficiary named in the certificate in question.
The defendant association, a fraternal beneficiary association,
was incorporated on November 12, 1887, and was composed of a
supreme, and of grand and subordinate lodges. The object of
the association was stated in its charter to be "to establish a
relief and benefit fund from which, upon satisfactory evidence of
the death of a beneficial member of the order, who has complied
with all its lawful requirements, a sum not exceeding five thou-
sand dollars shall be paid to such member or members of his or
her family, person or persons dependent on or related to him or
her, as he or she may have directed to be paid, as provided by
general laws."

The by-laws of the association provided for a change in the designation of the beneficiary named in the certificate as follows: "Sect. 3. A member may, at any time, when in good standing, surrender his or her benefit certificate, and a new certificate shall thereafter be issued, payable to such beneficiary or beneficiaries dependent upon him or her, or to any person or persons as such member may direct, upon the payment of a certificate fee of one dollar. Said surrender and direction must be on the prescribed form, furnished by the supreme secretary, signed by the member before the warden, secretary, and treasurer, and witnessed by them, and forwarded under seal of the subordinate lodge, with the benefit certificate, to the supreme secretary."

The certificate in question was issued to John J. McCarthy, upon his application, in March, 1889, and was made payable to "Sarah J. Judge, fiancée," and remained unchanged as regards the designation of beneficiary until his death, on August 23, 1889, and no steps were ever taken by him to bring about such a change under the by-laws. Previous to October, 1888, McCarthy and Sarah J. Judge had entered into an engagement of marriage. At that time she was employed as a table girl at the Norfolk House in Boston, and received wages at the rate of twelve dollars per month and her board and a room. Her work was confining, and McCarthy could not see her as often as he wished, especially on Sundays, and he asked her to change her employment, telling her, if she would do so, that he would supply her with such sums as, in addition to what she could earn, would be sufficient to afford her a comfortable support. After consulting her friends as to the propriety of accepting this offer, she accepted it, and left the Norfolk House, and entered the employment of Fleming and Company to learn the trade of a book-folder. During her employment there, which continued down to the time of the hearing, she earned on an average, until McCarthy's death, $4.38 per week. Each week McCarthy handed to her a sum sufficient, together with what she earned, to pay for her support, such sums varying from two to five dollars per week. The last payment of two dollars was made by him to her four days before he died. In the mean time McCarthy lived with his father and mother, who were dependent upon him for support. The certificate upon its issue was delivered to Sarah J., and she held it until the day

of his death, when she gave it to a messenger who stated that McCarthy had sent for it.   On the day he died, McCarthy made a will, which was duly admitted to probate, and of which his sister, Margaret L. Quirk, was executrix, containing the following : " My several policies of life insurance I wish to be paid as and to the persons named in them, except that in New England Order of Protection.   I wish that to be paid to my mother and sister, Margaret L."

The judge found that it was known both to McCarthy and Sarah J. that the wages which she would be likely to earn at Fleming and Company's would not, at least for some time after her employment there began, amount to as much as she was earning as a table girl at the Norfolk House, after deducting the expense of her board and room ; that McCarthy's promise to give her money was understood by both to have been made and accepted because they were engaged to each other, and that neither regarded it as an independent contract ; that she was under no obligation to remain at Fleming and Company's longer than she wished, but could return to her occupation as table girl at any time she chose ; that she would not have accepted money from him, and he would not have given it, if they had not been engaged ; that the arrangement was made for the contemplated advantage of both, and was made to her as his intended wife, and was understood to be conditional and dependent upon that relation ; that the Monday before he died, his feelings towards her for the time being, from some cause, probably a lovers' quarrel, became alienated from her ; that before he died he determined to revoke the designation of Sarah J. as the beneficiary, and to obtain possession of the policy, and made his will and sent for the certificate for this purpose ; that he did not tell her of his desire to break the engagement, and the engagement never was in fact broken ; that she did not understand that the engagement had been broken, or that he had made up his mind to break it ; that she expected after that Monday night to meet him again, and to make up whatever quarrel they had had ; that she was capable of earning her own living as young women in her station in life were accustomed to do, and was wholly dependent upon her wages for support ; that she was earning at Fleming and Company's at the time of the hearing from six to seven dollars a

week; that this was less than she had been accustomed to earn as a table girl, and less than she could live on as she had been accustomed to live, and less than she could comfortably live on; that the contributions of money by McCarthy while she was working at Fleming's were reasonably necessary for her comfortable support during that time; and that since McCarthy's death she had supported herself wholly from her own earnings at her trade, and was capable of so doing, but the money payable under the certificate would enable her to live much more comfortably than she could without it.

The plaintiffs contended that they were entitled to the proceeds of the certificate, as McCarthy's heirs and next of kin; Margaret L. Quirk contended that she was entitled to them, both as executrix and as legatee under his will; and Sarah J. contended that she was entitled to them, as the beneficiary named in the certificate.

The judge reported the case for the consideration of the full court, such decree to be entered as justice might require.

*J. A. McGeough,* for the plaintiffs.

*E. Avery,* (*P. Webster* with him,) for Sarah J. Judge.

MORTON, J. The Pub. Sts. c. 115, § 8, as amended by the St. of 1882, c. 195, § 2, which were in force at the time the defendant corporation was organized, provide that "a corporation organized for any purpose mentioned in section two may, for the purpose of assisting the widows, orphans, or other relatives of deceased members, or any persons dependent upon deceased members, provide in its by-laws for the payment by each member of a fixed sum, to be held by such association until the death of a member occurs, and then to be forthwith paid to the person or persons entitled thereto." It is evident from the language here used, that, while widows, orphans, or other relatives may be "persons dependent upon" a deceased member, it is within the contemplation of the statute that a person may be dependent upon a deceased member who is not a widow, or orphan, or relative of such member, and that it is one of the objects of the statute to provide that such persons may share in the benefits of the association which may be organized under it. The purpose seems to have been to provide that "widows, orphans, or other relatives," whether dependent or not, might be designated as

beneficiaries, and that any other person who is dependent upon a member, although not a widow, or orphan, or other relative, may also be designated by him as a beneficiary.  St. 1877, c. 204, § 1.  Pub. Sts. c. 115, § 8.  St. 1882, c. 195, § 2.  St. 1888, c. 429, § 8.  Nor is there anything in the statute which requires that the dependent person should be legally or wholly dependent upon a member.  On the contrary, the enumeration of the classes of persons who would be legally dependent upon a member, followed by a phrase distinctly intended to include other persons, would seem to establish conclusively that legal dependency was not the test.  Nor can it be justly said that, if the beneficiary is dependent in part, he or she is not dependent.  Cases will readily occur to one in which persons are partly supported or partially assisted by others.  It would be giving an unnecessarily harsh construction to a statute which the court has said should be construed "liberally, and in such a manner as to carry out the benevolent purpose sought to be provided for," to hold that such cases were excluded from it.  *American Legion of Honor* v. *Perry*, 140 Mass. 580, 589.

Trivial or casual, or perhaps wholly charitable assistance, would not create a relation of dependency, within the meaning of the statute or by-laws.  Something more is undoubtedly required. The beneficiary must be dependent upon the member in a material degree for support, or maintenance, or assistance, and the obligation on the part of the member to furnish it must, it would seem, rest upon some moral, or legal, or equitable grounds, and not upon the purely voluntary or charitable impulses or disposition of the member.  *American Legion of Honor* v. *Perry*, 140 Mass. 580. *Ballou* v. *Gile*, 50 Wis. 614.  Bacon's Benefit Soc. § 261.

Applying these considerations to the case before us, we think it is clear that Miss Judge was dependent upon McCarthy, within the meaning of the statute and of the by-laws of the corporation, both at the time when the certificate was taken out and at the time of his death.  From October, 1888, up to the time of his death, in August, 1889, she received from him weekly from two to five dollars towards her support, in addition to her own wages, which averaged during the same time $4.38 per week.  The sums which she thus received from him contributed in a material degree to her maintenance.  The Chief Justice, who heard

the case, found, as a fact, that what she earned at Fleming's per week " was less than she had been accustomed to earn as a table girl, and less than she could live on as she had been accustomed to live, and less than she could comfortably live on, and that the contributions of money·by Mr. McCarthy while she was working at Fleming's were reasonably necessary for her comfortable support during that time." He also found that McCarthy's " promise to give her money was understood by both to have been made and accepted because they were engaged to each other," though " neither regarded it as an independent contract"; that " she was under no obligation to remain at Fleming's longer than she wished"; and that " she would not have accepted money from him, and he would not have given it, if they had not been engaged," and the arrangement was made with " her as his intended wife, and was understood to be conditional and dependent upon that relation." The fact that Miss Judge was the affianced wife of McCarthy would not, as matter of law, constitute her a dependent upon him, (*American Legion of Honor* v. *Perry*, 140 Mass. 580,) and the St. of 1890, c. 341, was not ·passed till after the certificate was issued, and therefore does not apply. It is questionable, too, whether McCarthy's promise to contribute to her support could have been legally enforced by her. But we think, in view of the relation between them, she had a right to receive and depend on his assistance, and that he was under a moral obligation, after promising it, to continue to furnish it. She in fact depended on it, and was aided by it for many months, and down to his death. The money was not given by him, nor received by her, as a charity, but was given to and received by her as his intended wife, —,as a person who, in some sort, had a claim upon him; and, whatever his legal rights may have been, it plainly was not expected by either, that, so long as the relation between them continued, his assistance would be refused or withheld; and so her dependence on him had a certain quality of permanency, and was not casual or merely temporary. The fact that she could have gone back to her employment as table girl, and have supported herself as she had been accustomed to do before going to work at Fleming's, and the fact that since McCarthy's death she has supported herself, cannot affect her status at the time of his death, and at the time when the certificate was taken out.

If her situation since McCarthy's death, or at the time of the trial, is material, it would seem to be disposed of by the finding of the Chief Justice that " the money payable under the policy would enable her to live much more comfortably than she can without it." To assist dependent persons to live more comfortably after the death of a member is clearly one of the purposes for which a benefit certificate may be issued.

It is objected, that at the time of McCarthy's death she had ceased to be dependent upon him. But although there had been some difference between them, " probably a lovers' quarrel " it is said, and his feelings had for the time being become alienated from her, it is expressly found, that, up to the time when he died, he had not absolutely decided to break the engagement, and that the engagement was not broken while he lived. He gave her two dollars on the Monday night before he died, and she expected to meet him again and make up whatever quarrel they had had, and " did not understand that the engagement had been broken, or that he had made up his mind to break it." Nor does it appear, nor can we infer, that he intended not to contribute any longer to her support, or that she understood that she was not to depend on him any longer. Under these circumstances, we cannot say that the relation of dependency had ceased at the time of his death.

It is also urged, that upon grounds of public policy Miss Judge is not entitled to the fund. But it was admitted at the argument, on all hands, that the relations between the two were entirely proper, and we fail to see anything contrary to good morals or public policy in her claim to the fund.

The attempt of McCarthy to dispose of the fund by will, and to revoke the designation of Miss Judge as the beneficiary under the certificate, was wholly ineffectual. The by-laws of the defendant corporation pointed out the mode in which the beneficiary was to be changed, if at all, and that mode was not followed. Another beneficiary could be substituted only in the manner there provided. *Elsey* v. *Odd Fellows' Relief Association,* 142 Mass. 224. *Daniels* v. *Pratt,* 143 Mass. 216.

We think, therefore, that Sarah J. Judge, the person named in the certificate, is entitled to the fund.

*Decree for Sarah J. Judge.*