GEORGE A. WILBER & others *vs.* SUPREME LODGE NEW ENG-
LAND ORDER OF PROTECTION, LUCY COOPER, claimant.

Suffolk. May 17, 1906. — June 21, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & LORING, JJ.

*Fraternal Beneficiary Corporation.*

Under St. 1882, c. 195, § 2, now incorporated in R. L. c. 119, § 6, a person may be
found to be dependent on a member of a fraternal beneficiary corporation, so as
properly to be named as a beneficiary of a death benefit, if the assistance ren-
dered by the member to such person was not trivial or casual or wholly charita-
ble, but was substantial and material, and if the obligation to furnish it, although
it might not be enforceable at law, rested upon moral and equitable grounds
and the assistance was furnished in recognition of that obligation.

Under St. 1882, c. 195, § 2, now incorporated in R. L. c. 119, § 6, a woman named
in a certificate of a fraternal beneficiary corporation as a beneficiary to whom a
death benefit is to be paid may be found to have been dependent upon the mem-
ber within the meaning of the statute where she was the sister of the deceased
wife of the member and came with another sister, who was not strong and could
not work, to live with the member and his wife upon his agreement that if
the sister that became his wife would marry him the other sisters should go
with her and always have a home as long as he lived, and where after the
death of his wife the member said that they would go on "giving in together
and keeping house" just as they did before and that if the sisters "would keep
on keeping house for him" they might go on and live in the same way they
had been living, and where in pursuance of this arrangement the home was
kept up as before until the death of the member, the sister who could not work
acting as treasurer, the member contributing from $12 to $15 a week and the
person named as beneficiary contributing $4 a week and sometimes more.

CONTRACT, by the three children of George T. Wilber, de-
ceased, on a membership certificate issued by the defendant, a

fraternal beneficiary corporation, to recover the amount of $2,000 named therein. Writ in the Municipal Court of the City of Boston dated December 10, 1903.

The defendant admitted its liability, but alleged that one Lucy Cooper, a beneficiary named in the policy to the amount of $1,000 was a claimant for a part of the fund in question, and upon the defendant's motion, she was summoned in as a claimant.

On appeal to the Superior Court the case was tried before *Harris*, J. The certificate sued on was dated April 30, 1901, and contained the following provision: "Said member is entitled to all the rights and privileges of membership in the New England Order of Protection in the life and benefit fund of the order to the amount of Two Thousand (2,000) Dollars, which sum shall at his death be paid to George A. Wilbur, Herbert T. Wilbur, and Emma F. Wilbur, One Thousand Dollars divided equally, and Lucy Cooper One Thousand (1000) Dollars related to said George T. Wilbur as children and dependent."

The evidence upon the question whether the claimant, Lucy Cooper, was dependent upon George T. Wilber, so as to be entitled to be named as a beneficiary under St. 1882, c. 195, § 2, is stated in the opinion.

At the close of the evidence the plaintiffs requested the judge to direct a verdict for the plaintiffs for the full amount of the fund, namely, $2,000, and to rule that there was no evidence that Lucy Cooper was a dependent or relative of George T. Wilber under the statute. The judge refused so to rule. The jury returned a verdict for the plaintiffs in the sum of $1,000, and a verdict for the claimant in the sum of $1,000. The plaintiffs alleged exceptions.

*J. F. Sweeney & H. A. Wilson*, for the plaintiffs.

*A. S. Hayes & A. G. Sleeper*, for the claimant.

HAMMOND, J. The question is whether the evidence warranted a finding that Lucy Cooper was "dependent" upon George T. Wilber within the meaning of that word as used in St. 1882, c. 195, § 2, now incorporated in R. L. c. 119, § 6.

She testified that before July 14, 1897, she and her two sisters Agnes and Georgianna were all keeping house together in Cambridge; that she and her sister Agnes worked out and earned the money necessary to maintain the home; that Geor-

gianna, who was not strong, did the housework; that all this was known to Wilber; and that on July 14, 1897, Agnes married him; that before the marriage Agnes said to Wilber that she would not marry and break up the home of herself and sisters, and that he said that if she would marry him, all the sisters should go with her and "always have a home as long as he lived."

She further testified that after the marriage the old home was broken up and they all went to live with Wilber; that the arrangement was that Agnes should "run the house" and Georgianna would help her in the work, and she (the witness) should "give in what she could"; that in pursuance of that arrangement Agnes and Georgianna kept the house while Wilber and the witness worked out and supported the family, he contributing from $12 to $15 a week and she $4 a week, and sometimes more; that these sums were turned over to Agnes, who bought the food, paid the rent and "ran the house on it," and Wilber and Agnes "had their clothes out of it." In a word, they were all members of the same household, each contributing either by money or by work to the maintenance of the common home.

She further testified that, after the death of Agnes, Wilber said that " we would go on keeping house just the same as we did before my sister died, giving in together and keeping house," and also that " If we would keep on keeping house for him, we might go on and live the same way we had been living." She also testified that in pursuance of that arrangement the home was kept up as before until Wilber's death, Georgianna acting as treasurer.

There was also evidence that Wilber, after the death of Agnes, said to Lucy that he had made her one of the beneficiaries because his children (by a former marriage) all had good homes, and that if anything happened to her she had her sister Georgianna to look after and needed the money.

In McCarthy v. New England Order of Protection, 153 Mass. 314, 318, it was said that in interpreting this statute " legal dependency [is] not the test," and that the statute should be liberally construed. Morton, J., in giving the opinion, uses the following language: " Trivial or casual, or perhaps wholly

charitable assistance, would not create a relation of dependency, within the meaning of the statute or by-laws. Something more is undoubtedly required. The beneficiary must be dependent upon the member in a material degree for support, or maintenance, or assistance, and the obligation on the part of the member to furnish it must, it would seem, rest upon some moral, or legal, or equitable grounds, and not upon the purely voluntary or charitable impulses or disposition of the member."

In the present case the jury might properly have found that Lucy was dependent upon the assistance of Wilber to support herself and Georgianna in his lifetime in the same degree of comfort in which they had lived before his marriage to Agnes, and that Wilber had agreed in substance that the family should not be broken up, and that such loss as might be suffered from the fact that Agnes, in consequence of her marriage, had become a non-producer, should be made up by his contribution to the common fund. They might further have found that after the death of Agnes it was the assistance so rendered by Wilber which enabled Lucy and Georgianna to live in the same degree of comfort as before, and that this assistance was given and received, not as a gratuity, but under a mutual recognition of a moral obligation on the part of Wilber to stand to his promise; and that under the pressing sense of such an obligation Wilber made Lucy a beneficiary under the policy. In other words, the jury might have found that the assistance was not trivial or casual or wholly charitable, but was substantial and material, and that the obligation to furnish it, although perhaps not enforceable in law, nevertheless rested upon moral and equitable grounds, and that it was furnished not gratuitously, but in recognition of that obligation. This was enough. *McCarthy* v. *New England Order of Protection*, 153 Mass. 314.

*Exceptions overruled.*