MARY M. GOFF, APPELLEE, v. SUPREME LODGE ROYAL ACHATES, APPELLANT; SARAH E. LIPPS, INTERVENER, APPELLANT.

FILED JANUARY 3, 1912. No. 16,717.

1. Insurance: CONSTRUCTION OF POLICY: STATEMENTS IN APPLICATION. In construing a contract of insurance in a fraternal beneficiary association, for the purpose of determining whether the statements made in the written application therefor were intended to be representations or warranties, the court will take into consideration the situation of the parties, the subject matter, and the language employed, and will construe a statement made therein to be a warranty only when it clearly appears that such was the intention of the contracting parties, and that the mind of each party consciously intended and consented that such should be

the interpretation of his statements. *Ætna Ins. Co. v. Simmons,* 49 Neb. 811.

2. ———: ACTION ON POLICY: DEFENSES: STATEMENTS IN APPLICATION: PLEADING AND PROOF. And in order that the statements in such application shall constitute a defense to an action upon the certificate of membership or policy of insurance, issued to such applicant, it is incumbent upon the association to plead and prove that the answers were made as written in the application, that they were false in some particular material to the insurance risk, and that the association relied and acted upon those answers. *Ætna Ins. Co. v. Simmons,* 49 Neb. 811.

3. Contracts: VALIDITY: PUBLIC POLICY. A contract between an adult man and woman, not related to each other, that, if the latter will enter the home of the former and act as his housekeeper, he will support her and at his death leave һ r his estate, is not, where the relations between them are at all imes moral and proper, forbidden by law or obnoxious to public policy.

4. Insurance: CONSTRUCTION OF POLICY: "DEPENDENT." Where a woman, who is without means, in good faith leaves her own home and work and assumes and for years faithfully performs the duties of a housekeeper for a member of a fraternal beneficiary association, not related to her by consanguinity, under an agreement that in consideration for such services he will support her and at his death leave her his estate, and no evidence is offered showing any improper relations between them, *held* that she thereby becomes a dependent upon such member, and as such is eligible as a beneficiary in a certificate of membership issued to him by the association of which he is a member.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*A. H. Burnett,* for appellant.

*J. C. Kinsler* and *F. H. Woodland,* for intervener.

*Smyth, Smith & Schall, contra.*

FAWCETT, J.

From a judgment in favor of plaintiff upon a certificate of membership, issued by defendant to Joseph A. Lipps, and payable by its terms to plaintiff, defendant and intervener separately appeal.

The petition alleges that defendant is a corporation under the laws of Nebraska; that on December 11, 1901, it issued a certificate for $1,000 upon the life of Joseph A. Lipps, in which it agreed to pay to plaintiff, "a dependent and niece," at the death of said Lipps, $1,000; that all assessments were duly paid from time to time, and that said Lipps died January 17, 1908; that shortly after the death of Lipps defendant refused to furnish plaintiff any blanks upon which to prepare proofs of death, denied all liability to plaintiff upon such certificate and refused to pay the same. Prayer for judgment. Intervener, Sarah E. Lipps, filed her petition, asking to be allowed to intervene, for the reason that she was the wife and widow of the deceased; that at the time of his death plaintiff did not and could not have an insurable interest in the life of said Lipps, and could not be a beneficiary in said contract, and that, "under the law and the terms and provisions of the by-laws and articles of incorporation of the defendant, she is entitled to the proceeds of said policy." Defendant filed its answer to the petition of plaintiff, in which it admits its incorporation, the issuance of the certificate to Lipps, in which "it agreed, among other things to pay to Mary M. Goff a sum not exceeding one thousand ($1,000) dollars on the death of said Joseph A. Lipps," the correctness of the copy of the certificate attached to plaintiff's petition, the payment of all the assessments, the death of Lipps as alleged, the request of plaintiff for blanks on which to make proof of death, the refusal to furnish the same, and the refusal to pay the money or any part thereof to plaintiff.

The answer then alleges that the defendant is a fraternal beneficiary association, and that the certificate was issued upon a written application made by Lipps, and on the conditions named in his application, one of which was that plaintiff was his niece; that the statement made by Lipps as to the relationship of plaintiff was false; that they were not in any manner related by

consanguinity, and that plaintiff was not in any manner dependent upon Lipps. It then sets out *in extenso* the statements made in the application, the conditions contained in and indorsed upon the certificate, and the agreement therein that all such statements and conditions should constitute the basis for and form a part of the certificate, and making the same warranties on the part of the applicant, and an agreement that any untrue statements or answers contained in the application or made to the examining physician, or any concealment of facts or failure to comply with the laws, rules and usages of the order should render the certificate void, and that all rights of any person thereunder should become forfeited. Plaintiff replied to the answers of both intervener and defendant; said replies being substantially general denials.

The trial proceeded to the court and a jury upon the issues thus framed. When all parties had rested, each moved the court for a peremptory instruction. The court thereupon made the following order: "I will excuse the jury and take the case from the jury, a question of law solely being in the case." To this order the intervener alone excepted. This action of the court having been invited by all of the parties, neither can now predicate error thereon.

As it appears to us, the case involves but two simple propositions: (1) Was the statement in the application, that plaintiff bore the relation to the applicant of niece, a warranty, the falsity of which would, regardless of its materiality to the risk, render the certificate void? (2) Was plaintiff a dependent within the meaning of the constitution and by-laws of defendant, and of the statute in relation to such societies? We will consider these two points in the order named.

1. The wording of the application is: "I hereby direct that the amount of the beneficiary fund, to which my beneficiaries may be entitled at my death, shall be paid to Mrs. Mary M. Goff, residing at 1110 South Eighth,

related to me as niece." Authorities are cited by defendant, from other jurisdictions, which sustain its contention that a false answer avoids the policy, where the application provides that all of the answers of the applicant contained therein are express warranties, and that, if any of them are shown to have been false, the policy is void. It would serve no good purpose to refer to those cases here, for the reason that this court is, by repeated decisions, committed to the rule that, "In construing a contract, for the purpose of determining whether the statements made therein were intended by the parties thereto to be warranties or representations, the court will take into consideration the situation of the parties, the subject matter, and the language employed, and will construe a statement made to be a warranty only when it clearly appears that such was the intention of the contracting parties; that the mind of each party consciously intended and consented that such should be the interpretation of his statements." *Ætna Ins. Co. v. Simmons*, 49 Neb. 811. In the opinion in that case (p. 842) we said: "We reach the conclusion, therefore, that in order that the answers under consideration—made by the assured—constitute a defense to this action, it was incumbent upon the insurance company to plead and prove not only that the answers were made as written in the application, but that they were false; that they were false in some particular material to the insurance risk; and that the insurance company relied and acted upon these answers." The rule there announced has been followed in *Kettenbach v. Omaha Life Ass'n*, 49 Neb. 842, *Ætna Life Ins. Co. v. Rehlaender*, 68 Neb. 284, *Bankers Union of the World v. Mixon*, 74 Neb. 36, and in a number of other cases, which we will not encumber this opinion by citing. While this rule, when originally announced in the *Simmons* case, may have been a "blazed trail," it has now become a beaten path in which we are content to trav< That the statement in the application here, that plaintiff bore the relation to the de-

ceased of niece, was not material to the insurance risk seems clear. The falsity of that statement in no manner shortened the life of the deceased, and hence did not increase the hazard assumed by defendant. If plaintiff had been required to prove this relationship, in order to bring herself within the class which defendant was permitted to insure, then there could have been no recovery by her; not because of the falsity of the statement, but because of the fact that she was not one of a class who. under the statute and the constitution and by-laws of the defendant, could lawfully become a beneficiary. This brings us to a consideration of the second point.

2. Section 94, ch. 43, Comp. St. 1909, provides: "No fraternal society created or organized under the provisions of this act shall issue beneficiary certificate of membership to any person under the age of eighteen years, nor over the age of fifty-five years. Payment of death benefits shall only be made to the families, heirs, blood relations, affianced husband or affianced wife of, or to persons dependent upon, the member." The constitution and by-laws of defendant follow this statutory requirement. Was plaintiff "dependent upon the member," within the meaning of the statute and of the laws of the order?

The evidence shows that plaintiff is the widow of one James O. Goff, who died in Kansas, leaving plaintiff and three children surviving. Shortly thereafter one of the children died. After the death of this child plaintiff lived for two years with a sister-in-law in Missouri and for four years with a brother, the latter two of such years in "Dakota," during all of which time she kept her two children with her. The brother with whom she was living having removed from "Dakota," she remained there, working at day's work to support herself and children. When the older of the two boys was able, he went to work in "Dakota." From "Dakota" she came with her other child to Nebraska, and after stopping a while at Norfolk went to Columbus. While working

there, supporting herself and son, she met the deceased. Her boy was then 15 years of age. At the time she met deceased he was selling sewing machines. In the preparation of a lease for a machine which she had purchased from him, he asked her name and the name of her mother, and, upon being informed, told plaintiff that he had a niece who married a man by the name of Goff. She told him her mother's name was Nancy Lee, and he said he had a half-sister by that name. He told her that she was raised by a family by the name of Lee, and that he was her uncle. It appears that she knew little of her family record. About a month or so later plaintiff became seriously ill, which illness lasted about four months. Deceased went to her house and, with the aid of her son, took care of her. She testified that, after she had recovered, deceased said to her: "If I would come and keep house for him, we would work together and have a home together, he would have a home and I would have a home. He said I was not able to work and support myself, but that I could keep house for him and we would live together and he would support me, and at his death I should have what he had;" that, when deceased obtained the certificate of insurance in controversy, he gave it to her, and it remained in her possession until his death; that he also executed a will in her favor; that he did not stay at her house when he was in town before she went to keep house for him, but stayed at the hotel; that after she assumed the duties of housekeeper they, together with her boy, resided at different places named when they settled in Omaha, where they lived for several years and until the death of Mr. Lipps. One year of the time, prior to settling in Omaha, was spent at Papillion. Her son always lived with her in the same house, and her other son sometimes visited them. Mr. Lipps had a wife and son residing in Omaha during at least the last three years of Mr. Lipps' life.

The charge is made that Lipps had abandoned his wife and children, and that he and the plaintiff lived to-

gether illicitly for years and up to the date of his death. We have before us three abstracts, the main abstract prepared by defendant, a supplementary abstract by intervener, and one by plaintiff. These abstracts are barren of any proof to sustain either of these charges against plaintiff. It is claimed in the briefs that the trial court found that the relations between plaintiff and Lipps were illicit. We do not think the language used by the trial judge will bear any such construction. For him to have made such a finding, he would have been compelled to go outside of the evidence and indulge in conjecture not warranted thereby. This the learned trial judge did not do.

Cases are cited in which persons, situated somewhat similarly to plaintiff, have been held not to be dependents within the meaning of statutes not materially unlike our own; but in every such case the relations between the claimant and the deceased were shown to have been meretricious. No case has been cited, nor do we think one will ever be decided, holding that a woman, who, without means, in good faith leaves her own home and work and assumes and for years faithfully performs the duties of housekeeper for a man who agrees, in consideration therefor, to support her and at his death leave her his estate, does not thereby become a dependent upon him; and especially so where there is an entire absence of evidence to show any improper relations between them.

The right of a plaintiff to recover in an action like this is fully sustained in *James v. Supreme Council of the Royal Arcanum*, 130 Fed. 1014, and *McCarthy v. Supreme Lodge New England Order of Protection*, 153 Mass. 314, 11 L. R. A. 144, which case is cited and followed 15 years later in *Wilber v. Supreme Lodge New England Order of Protection*, 192 Mass. 477.

Our attention has been called to the recent case of *Royal League v. Shields*, 251 Ill. 250. That case was decided by a divided court. The majority opinion

held that plaintiff was not entitled to recover. The dissenting opinion (by three of the justices) makes out a strong case in favor of a recovery, even under the facts disclosed in that case. A single quotation from the majority opinion will show that, had the facts been as they are here, plaintiff's action would have been sustained. The opinion states: "Frieda Wassmann was not related in any way to Michael Shields. She was not his daughter by nature or adoption. *She had at no time been a member of his family or his household.* He could not legally have been compelled to assist in her support, nor was he morally bound to furnish her support or leave her this money. *Had she been at the time of his death a member of his household* a different situation might have been presented, and the case of *Wilber v. Supreme Lodge New England Order of Protection,* 192 Mass. 477, cited by appellant, might then have been in point." (The italics are ours.) In the dissenting opinion it is said: "He voluntarily assumed the burden of contributing to her support in a regular and substantial manner and did so regularly for nine years before his death. In my opinion these facts bring appellant within the definition of a dependent, and as such made her eligible as a beneficiary under the statute and the by-laws of the Royal League and entitled her to the money paid into court by the association." It thus appears that both the opinion and dissenting opinion sustain a recovery in this case.

We think the language in *Keener v. Grand Lodge, A. O. U. W.,* 38 Mo. App. 543, is apt: "I would not restrict dependents to those whom one may be legally bound to support, nor, yet, to those to whom he may be morally bound, but the term should be restricted to those whom it is not *unlawful* for him to support." That it was lawful for Lipps to bind himself to support plaintiff under the circumstances shown cannot be doubted. That he did so bind himself is equally clear. That such a contract is not obnoxious to public policy is beyond question.

The reasoning of the above cited cases appeals to us as eminently sound. Without pursuing the matter further we hold: (1) That the answer of the deceased in his application, that plaintiff bore to him the relation of niece, whether it be termed a representation merely or a warranty, was not material to the risk, and hence did not avoid the policy. (2) That plaintiff was, at the time the application was signed and the certificate issued, and at the time of the death of Mr. Lipps, dependent upon him for her support, and that she is therefore competent to take as the beneficiary named in the certificate in suit.

The judgment of the district court is therefore

AFFIRMED.