ARTHUR J. KOENIGSTEIN, EXECUTOR, APPELLANT, V. ALBERT FINKE, APPELLEE: HATTIE LINDSAY, INTERVENER, APPELLANT.

FILED JULY 3, 1917.    No. 18716.

1. Insurance; BENEFICIAL INSURANCE: DEPENDENT. The statute should be liberally construed in determining whether the beneficiary named by the insured, in a fraternal beneficiary association, is a "dependent" within the meaning of the statute.

2. ———: ———: ———. When the beneficiary named performs continued and necessary personal services for the insured under an agreement that the insured will contribute to her support by making provision for her for that purpose in his will, she is to that extent dependent upon him, and should be so held in construing the statute. The insured would be morally, if not legally, bound by such agreement.

3. ———: ———: CHANGE OF BENEFICIARY. If the insured in pursuance of such agreement makes her the beneficiary in his will, and the company has notice of that fact, and of the reason for so doing, and does not object, but allows all parties to believe that such beneficiary will be recognized as such by the company, and afterwards, in an action upon the certificate by such beneficiary and the administrator of the estate of the insured, pays the money into court and makes no defense, this will be a sufficient change of beneficiaries in favor of the person so named by the insured.

APPEAL from the district court for Madison county: ANSON A. WELCH, JUDGE. *Reversed, with directions.*

*William V. Allen, William Dowling* and *Arthur J. Koenigstein,* for appellants.

*Arthur C. Mayer, contra.*

HAMER, J.

Arthur J. Koenigstein, as executor of the last will and testament of Friedrich Finke, deceased, brought this action as plaintiff in the district court for Madison county against the Grand Lodge of the Order of the Herman Sons of Nebraska and Albert Finke, defendants. Hattie Lindsay became intervener. The action is brought upon a beneficiary certificate for $500 issued by a fraternal insurance

101 Neb.—29

company to Friedrich Finke. Albert Finke is the brother
of Friedrich Finke. The intervener, Hattie Lindsay, filed
an amended petition of intervention. After the filing of
the petition the fraternal association paid the money into
court, where it awaits the rendition of proper judgment.
Albert Finke demurred to the plaintiff's petition and the
petition in intervention as amended, as not stating "a
cause of action in favor of the plaintiff and against the de-
fendant, Grand Lodge of the Herman Sons, or against this
demurring defendant," and judgment was entered in his
favor, from which the administrator and the intervener
appeal. The intervener assigns the following errors: (1)
The district court erred in sustaining the demurrer of Al-
bert Finke; (2) the association has paid the money into
court, and therefore waives any right it may have in the
premises and declines to become a litigant in the case.
This leaves the sole question to be determined, whether
Mrs. Lindsay's petition of intervention states a cause of
action on her account against the fund in court.

She alleges the existence of the company at the time the
benefit certificate was issued to Friedrich Finke and its
existence now, also that he was eligible to insurance in the
association, and was insured for $500 in the event of his
death, and that he died in good standing in the Order May
4, 1912, having complied with all the requirements of said
beneficiary certificate and with the by-laws of the defend
ant, and that said certificate then became due and payable;
that said Friedrich Finke had no friends or relatives living
in the United States, and for a long time prior to his
death was greatly afflicted with tuberculosis, and was
thereby so incapacitated as to require the constant atten-
dance of a nurse; that many months prior to his death said
Friedrich Finke orally contracted with the petitioner, who
was not related to him by blood or marriage, that in con-
sideration that she would take him into her home and
would nurse and would care for him, and furnish him with
food, raiment, shelter, medicine and medical attendance,
and such things as his condition required until his death,

he would assign and transfer to her said beneficiary certificate or policy of insurance, and would make her the beneficiary thereof, and would make and sign an instrument in writing, which he did April 11, 1912, purporting to be his last will and testament, and would thereby assign and transfer to her said beneficiary certificate, and make her the beneficiary thereof; that in pursuance thereof said Hattie Lindsay did all that she had agreed to do; that said Germania Lodge, well knowing of the performance on the part of the petitioner of her part of said contract, and upon the strength thereof relying upon the fact that she was to be considered and treated by the said Friedrich Finke as the beneficiary of said benefit certificate or policy of insurance, the said Germania Lodge No. 1 of Norfolk, Nebraska, which is a part of defendant's organization, by and through its officers, assented to said substitution of the petitioner as the beneficiary of said benefit certificate or policy of insurance, and that said defendant never protested against or warned the petitioner that her claim to said benefit certificate or policy of insurance would be contested or objected to on its part, whereby the intervening petitioner avers that the defendant waived any right it might have in the premises to protest against or object to the substitution of the petitioner as the beneficiary of said benefit certificate or policy of insurance, and is estopped to deny the petitioner's right to recover herein; that by reason of the issuance of said beneficiary certificate and the assigning thereof and the death of said Friedrich Finke said sum of $500 became due and owing to the intervener with 7 per cent. interest thereon from May 4, 1912.

The fund is in the custody of the law. It is a fund in the hands of the court. The contract made and the work which Mrs. Lindsay was doing for the testator were known to the Grand Lodge of the Order of the Herman Sons of the state of Nebraska, and it made no protest or opposition thereto. It seemingly acquiesced in all that was done.

By its silence it became estopped to deny the validity of the contract and its performance by the intervener.

Did Friedrich Finke exercise his right to substitute a new beneficiary? The beneficiary certificate contained the clause: "At the time of admission every brother has to state in his application the person or persons who are to be the beneficiary of the insurance money after his death. However, the brother may at any time withdraw these names and make any other person the beneficiary of the insurance money, providing, however, that the grand lodge receive a written notice thereof. To make such a transfer binding, he must hand in such a request to the grand secretary, which will be certified by the secretary of his lodge, with the lodge seal. The fee for this is fifty cents, which the brother has to pay. As receivers of the insurance sum, only the wife, children, or other blood relatives, also foster parents or other legally recognized representatives, may be designated."

It would seem that there was an earnest purpose on the part of the Order of the Herman Sons to pay the sum of $500 upon the decease of a brother in good standing to the person who might be the beneficiary.

The first section of article 1, relating to the objects of the order, contemplates that "widows and orphans and other survivors * * * may be supported properly and kept from want at the time when help is most needed, that is, when the support has been taken away from them." It will be seen that it need not be a widow or an orphan, it may be "other survivors." Should it apply to one situated as the intervener is here? Mrs. Lindsay was taking care of the insured, who was sick unto death, and was giving him food and medicine and shelter. She was acting as a nurse and in a menial capacity. This and other similar allegations are sufficient, in the absence of any motion to make the pleading more definite and certain, to admit proof that she needed the support which this policy would give her, and that she depended upon it for the comforts and necessaries of life. If he did not take care of her no one else

would. He had nothing with which to reward her except this insurance policy, but he had promised to use that, and that was as substantial as if he had money in his pocket-book, or other property in his possession, which he might have given this woman. When she had labored to the end and death had laid its cold hand upon the man who was to provide for her, had she nothing to expect from the Grand Lodge of Herman Sons? It was not objecting. It seems to have consented to it. The principal ground for supporting the trial court in sustaining the demurrer to the intervener's petition was that the statute provides that benefits shall not be paid except to certain relatives named or to dependents. It would seem that the provision of the statute relates to the contract to pay, and to its binding force upon the company. In any event it does not relate to the right to make voluntary settlements in accordance with the strongest kind of moral obligations. If, therefore, every person interested in any manner in this company had formally expressed his consent to pay this insurance to this woman, the statute would not be a bar to their doing so. Some courts have held that the local lodge cannot consent for the members, but we have uniformly held that notice to the local authorities, who should be the ones to consent to a transfer of beneficiary, is notice to all the persons interested in the company. But we do not need to put our decision upon that ground. First, was the contract of the deceased followed up by his will and the performance on the part of this woman a sufficient designation of the beneficiary under the circumstances, there being no objection on the part of the company? Second, was this woman a dependent under the allegations of these pleadings, within the meaning of the statute?

In 1 Bacon, Benefit Societies and Life Insurance (2d ed.) sec. 308, the supreme court of Texas is quoted as saying, in *Splawn v. Chew*, 60 Tex. 532: "The right to change the disposition of the money being established in the member, the next question is, how is it to be exercised? It is contended by appellees that it can be exercised only in the

manner pointed out in the third section of the third by-law, which reads as follows: 'Members may at any time, when in good standing, surrender their certificate, and have a new one issued, payable to such beneficiary or beneficiaries dependent upon them as they may direct, upon payment of a certificate fee of fifty cents.' This section is in further recognition of the right to make the alteration, and it. seems to be admitted that the surrender of the old certificate and the issuance of a new one under this section would effect a change in the beneficiaries of the policy. But is this the only way in which such a change can be effected? The right to make the change is given by a different section of the by-laws, and exists in the insured so long as he remains a member of the order. A method by which he may accomplish it to the satisfaction of the order is pointed out in the section last cited, but we do not consider this as exclusive of all other ways of effecting the same object. The design of this section is to protect the interests of the corporation. The company is entitled to know who are the parties entitled to the benefit money, and this is an effectual and certain means of giving that information. But, like all such provisions in the by-laws of private corporations, it may be waived at the option of the corporation, being for its benefit alone. It has been so held in reference to such provisions when prescribed in mandatory terms. If they can be waived in such cases, much stronger would seem to be the reason why this can be done when the course to be pursued is directed, as in this instance, in permissive language alone. * * * As a by-law of the order this provision entered into the understanding between the company and the member effecting the insurance, and the rights of interested parties are not strengthened by the fact that the same provision is found in the certificate. It is still a condition for the benefit of the company, to be insisted upon or waived according to their election."

In *Goff v. Supreme Lodge, Royal Achates*, 90 Neb. 578, it was held: "Where a woman, who is without means, in

good faith leaves her own home and work and assumes and for years faithfully performs the duties of a housekeeper for a member of a fraternal beneficiary association, not related to her by consanguinity, under an agreement that in consideration for such services he will support her and at his death leave her his estate, and no evidence is offered showing any improper relations between them, held that she thereby becomes a dependent upon such member, and as such is eligible as a beneficiary in a certificate of membership issued to him by the association of which he is a member."

In *Keener v. Grand Lodge, A. O. U. W.,* 38 Mo. App. 543, it is said: "I would not restrict dependents to those whom one may be legally bound to support, nor yet to those to whom he may be morally bound, but the term should be restricted to those whom it is not unlawful for him to support."

We think if the insured is under an obligation to help a person in her manner of living she is a dependent, within the meaning of the statute, and we ought not to seek for a more technical definition of a dependent in order to defeat her claim. In fact this court has already so decided. In the *Goff* case, above cited, it was said: "No case has been cited, nor do we think one will ever be decided, holding that a woman, who, without means, in good faith leaves her own home and work and assumes and for years faithfully performs the duties of housekeeper for a man who agrees, in consideration therefor, to support her and at his death leave her his estate, does not thereby become a dependent upon him, and especially so where there is an entire absence of evidence to show any improper relations between them."

If this woman had means of her own so that she did not depend upon the promise to reimburse her, and so that she could abundantly afford to support him in his last day as an act of charity, that fact does not appear in the pleadings demurred to, and no such presumption ought to be indulged.

The sister of the deceased, one of the original beneficiaries made no claim to the money. It is said that the sister is dead, but of course this does not appear in the pleading, and it is not shown of course by the demurrer of the brother, Albert Finke.

It will be seen that under the case above cited the intervener might have a home and some money, and may have had the capacity to earn other money, and yet be a dependent within the meaning of the statute. We think that the demurrer of Albert Finke should be overruled. As it is agreed between the parties that a final disposition of the rights of the parties shall be made upon a consideration of the demurrer, it is ordered that the district court pay this money to the intervener.

Reversed and remanded for this order to be carried out.

REVERSED.