# CHARLESTON.

CALLIE M. GILLESPIE *v.* MODERN WOODMEN OF AMERICA

(No. 5393.)

Submitted May 4, 1926. Decided May 11, 1926.

1. INSURANCE—*Beneficiary Named in Contract of Fraternal Beneficiary Insurance is a "Dependent," Within Statute and By-Laws of Association, if Beneficiary Has Been Supported in Home of Member Many Years, Performed Household Duties as Member of Family, and Deceased Had Moral Obligation to Contribute to Her Support Which He Was Discharging at Time of His Death (Code, c. 55a, § 6).*

The beneficiary named in a contract of insurance issued to a member of a fraternal beneficiary association operating in this State under Chapter 55A of the Code, is a dependent within the meaning of that statute and the by-laws of the association, where it appears that the beneficiary so named has been supported in the home of the member for many years, that she has nursed his wife (her sister) during her

lingering illness, performed household duties before and after the wife's death as a member of the family, and that there is a moral obligation on the member to contribute to her support which he in good faith was discharging at the time of his death, and not because of capricious liking or passing liberality.   (p. 605.)

(Mutual Benefit Insurance, 29 Cyc. p. 244.)

2.   EVIDENCE—*Plea of Guilty in Criminal Case on Which Judgment Had Been Pronounced, is Admissible in Subsequent Civil Case as Admission of Guilt, But May be Overthrown by Other Evidence; Where Plea of Guilty in Criminal Case on Which Judgment Has Been Pronounced is Received in Subsequent Civil Case as Admission of Guilt, Weight Thereof Becomes Jury Question.*

A plea of guilty in a criminal case on which judgment has been pronounced may be received as evidence in a subsequent civil case as an admission of guilt of the offense charged, but it is not conclusive, and may be overthrown by other evidence; and when such other evidence is properly introduced, the weight of the confession becomes a jury question.   (p. 608.)

(Evidence, 22 C. J. §§ 371, 506.)

3.   CRIMINAL LAW.

Point 4 of the syllabus in *State* v. *Noble*, 96 W. Va. 432, approved and applied.   (p. 610.)

WOODS, HATCHER, JUDGES, absent.

(Appeal and Error, 3 C. J. § 881; 4 C. J. § 1786 [Anno].)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mercer County.

Action by Callie M. Gillespie against the Modern Woodmen of America on a benefit certificate.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Truman Plantz, Geo. G. Perrin,* and *McClaugherty & Richardson,* for plaintiff in error.

*Sanders, Crockett, Fox & Sanders* and *James S. Kahle,* for defendant in error.

LIVELY, JUDGE:

Plaintiff below, hereinafter called the plaintiff, obtained judgment for $3,000.00 upon a verdict against the Modern

Woodmen of America, defendant below, hereinafter called defendant, on Dec. 17, 1924. Defendant below prosecutes this writ of error.

Defendant is a fraternal benefit association chartered under the laws of Illinois, and admitted to transact business in this State. About the year 1904, C. A. Mitchell, now deceased, became a member of a local lodge at Bluefield. A certificate was issued to him, the beneficiaries therein being his wife and children. About the year 1922 his wife died, having become an invalid for two or three years prior to that time. About the time of his wife's death he designated the plaintiff as his beneficiary, naming her as sister, and a new certificate in accordance with such designation was duly issued on Jan. 23, 1922, and delivered to Mitchell on the 27th day of that month. He sealed the new certificate in an envelope and delivered it to plaintiff. She kept it in her desk, not knowing what it contained, until his death when it was opened. Plaintiff was not a sister of Mitchell but was the wife of Mitchell's wife's brother. She made her claim and filed her proofs as sister-in-law.

It appears that about nineteen years before the trial of this case, the plaintiff's husband died, leaving with her a girl baby then about two or three weeks old. At the request of Mitchell and his wife she came to live with them in their home, where she lived until the time of Mitchell's death, educating her child in the public schools at Bluefield. Until about three years prior to his death on March 14, 1923, she assisted Mitchell in his retail coal business at a small salary, not named. Then her sister became an invalid and she looked after the household affairs and waited upon and nursed the sister until her death, which resulted from cancer. After her sister's death, she continued in the home doing the household work and acting as the mistress of the household. It does not appear whether any wages were paid to her after she ceased to work at the coal yard office. The relations between herself on the one hand and her sister and Mitchell on the other, were cordial and she was treated as a member of the family.

In 1922, Mitchell confessed to a violation of the prohibition laws on an information filed against him in the United States

District Court for the Southern District of West Virginia, and was sentenced to pay a fine and to confinement in the jail at the county seat of Mercer County for a period of six months. He served that sentence, and during its service plaintiff continued in charge of his home where she resided. A short time after he was released from the sentence, and in the year 1923, he was killed by his son Oscar in the City of Bluefield.

It appears that after Mitchell became involved in the criminal prosecution in the federal court, he conveyed his real estate to his wife, and, she having died, his children became her heirs at law of the property, subject to his curtesy. He desired to sell the property, divide the proceeds among those entitled thereto and to leave the community. The son refused to join in the conveyance, and it appears that this brought about the ill-feeling which resulted in the fatal shooting of Mitchell by his son Oscar.

Defendant pleaded the general issue, and filed special pleas averring that Mitchell had engaged in the manufacture and sale of spirituous liquors and had violated the terms of the benefit certificate which made the policy void if he so engaged; that he came to his death as a consequence of a personal altercation in which he was the aggressor; that his death was occasioned by a violation of law or an attempted violation of law on his part, which also avoided the policy under its terms; that plaintiff was not eligible as a beneficiary under the charter, constitution and by-laws of defendant, and the laws of this State; that she was not a sister nor other blood relative of deceased, and was not a person dependent upon the insured member. To this latter plea plaintiff replied that she was Mitchell's sister-in-law, a member of his family, and was dependent upon him, and was therefore eligible to be a beneficiary and receive payment of the certificate. To this replication defendant replied generally. Issue was joined on the other pleas and on the general issue, and on the issues raised by these pleas the case was tried before a jury, resulting in a verdict and judgment for $3000.00, as above set out.

Defendant's by-laws restrict payment of benefits to the wife, surviving children, including legally adopted children,

or some other person or persons specifically named in the benefit certificate as beneficiary or beneficiaries, who are related to the member as heir, blood relative (blood relative meaning relationship not farther removed than cousin in the first degree), *or person dependent upon him,* or member of his family whom the applicant shall designate in his application. Our statute on fraternal benefit societies, Sec. 6, Chap. 55-*A,* Code, says that ''payment of death benefits shall be confined to wife, husband, * * * or to a person or persons depending upon the member.'' It will be noted that under the by-laws of defendant a member of the family may be a beneficiary, but under the statute a dependent can be made such, not naming a member of the family in terms as a person to whom benefits may be paid. Plaintiff predicates her right to recovery as being a member of Mitchell's family, and also as a dependent. Defendant replies that the certificate of membership sued on is a West Virginia contract and governed by the West Virginia law which restricts payments of benefits to the persons therein named, including dependents, and therefore she cannot recover as a member of the family; while plaintiff says that the contract is an Illinois contract, and is governed by its laws which authorize payments to a member of the family. If plaintiff be a dependent of Mitchell it is immaterial which law governs, for both permit payment to dependents. Defendant's counsel frankly concede that if a beneficiary is designated under a relationship which does not in fact exist, but is eligible under some other permissible and legal relationship, the beneficiary is entitled to receive payment. It becomes material therefore to determine whether plaintiff was a dependent within the meaning of the law and our statute; for if she is not, she cannot recover, and it would be immaterial to consider the defenses interposed by the other pleas.

The question of dependency under fraternal benefit by-laws and the statutes governing them has been before the courts very many times. It would serve no useful purpose to review all these cases; the text-books and digests do that. One of the recent cases is *Hunt* v. *Winkleman* decided in 1920 by the Supreme Court of Maryland, 110 Atl. Rep'r. 490, where the

various decisions, including *McCarthy* v. *Order of Protection,* 153 Mass. 314; *Wilber* v. *Order of Protection,* 192 Mass. 477; *Order of Foresters* v. *Heffernan,* 283 Ill. 429, 119 N. E. 426; *Goff* v. *Supreme Lodge Royal Achates,* 90 Neb. 578, 134 N. W. 239, and many of the other cases cited in the briefs, are reviewed. The court quoted with approval from the *Heffernan* case as follows: ''The cases generally hold upon this question that it is sufficient to show that a beneficiary is a dependent if he receives some substantial support or assistance from the insured, such as food, clothing, lodging or education, as named in this particular policy in question, or some other substantial aid and support, provided such aid or support rests upon some moral or legal or equitable ground and not upon purely voluntary or charitable impulses or disposition of the member.''

We are in accord with the decisions which give a liberal construction of these beneficiary policies. Perhaps the better summary of the decisions on the question is that given in Sec. 336 of Vol. 1 (4th ed.) Bacon's Benefit Societies, where the author says: ''In accordance with the liberal view of the Supreme Court of Michigan, in defining who are included in the term family, we should say that, if any person, relative of the member or not was supported by him, directly or indirectly, or wholly or in part, at his home or abroad, because of a legal or moral obligation, or merely from affection, such person might be called a dependent and be designated as the beneficiary of such member. But in all cases it would appear essential to apply the test of good faith; for mere capricious liking or temporary liberality in the way of gifts would not make the recipient a dependent.'' And in *Royal Neighbors of America* v. *Fletcher,* (Okla. 1924) 227 Pac. 426, it was said that it is sufficient for dependency if the assured has voluntarily undertaken to support the dependent under such circumstances as impose a moral obligation to continue the maintenance of the dependent and is fulfilling the obligation in good faith. The degree of dependency is generally not controlling. *Sovereign Camp of Woodmen* v. *Noel,* 126 Pac. 787, 41 L. R. A. (N.S.) 648. See also *Sovereign Camp &c.* v. *Hoehn,* (Ala. 1920) 85 So. 696; *Silverstein* v. *Vellerman,* (Mass. 1922) 134 N. E. 395; and 14 R. C. L. page 1385, Sec.

553. The extent or degree of dependency is not generally important. *Poccardi* v. *Compensation Com'r.*, 79 W. Va. 684.

Dependency is determined from the facts of each particular case. When the facts are uncontradicted it becomes a question of law, but if controverted, the jury must decide. There is no controversy of fact in regard to the alleged dependency of the plaintiff in the instant case. Plaintiff upon the death of her husband came to live with her sister in Mitchell's home. For many years (about 13) she assisted him in his coal business on a small salary. When the wife became sick she devoted her time to the home, nursing the sick and taking care of the domestic affairs. After the wife's death she continued in the home, receiving her support and maintenance. We think these long years of intimate service in the family would impel Mitchell to care for her. There was a moral obligation on him to do so. She says she was relying on him for support and maintenance, and it is quite evident that he was in good faith discharging that moral obligation. The test is not a legal obligation. The fact that he changed the certificate and made her the beneficiary is evidence that he recognized the obligation and wanted it discharged even after his death. We see no error in the action of the trial court in refusing to direct a verdict on the ground that she was not a dependent within the meaning of the by-laws and statute. We cannot say that the relation of master and servant existed exclusively throughout these many years. While she received a small salary while at work in the coal yard, it does not appear that she was hired to attend to the sick or do household duties before and after the wife's death. Defendant, evidently upon the theory that the evidence of her dependency was inconclusive and presented a question of fact, offered and the court gave its instruction No. 9, by which the question of her dependency was submitted to the jury. They were told by that instruction that if they believed that she was not a member of Mitchell's family, and not dependent upon him, then they should find for defendant. The jury answered that she was dependent.

The next contention is that it was error to refuse to set aside the verdict, because the evidence convicts Mitchell of manufacturing and selling spirituous liquors, the contract of

insurance expressly providing that it shall be null and void if the member thereafter shall engage in the manufacture or sale of intoxicating liquors to be used as a beverage, in the capacity of proprietor, stockholder, agent or servant. The record of the conviction in the United States District Court was introduced, in which it appears that Mitchell confessed when arraigned upon the information filed against him and was fined and sentenced; and the evidence that he served such sentence is relied upon to avoid the benefit certificate and defeat recovery. To meet this evidence plaintiff showed that Mitchell had pleaded not guilty and a trial was had resulting in a hung jury; that upon the calling of the case for second trial his counsel advised him to confess rather than run the risk of a verdict against him and a severe punishment on the verdict, so that by a confession and compromise the court would be more likely to be lenient in the punishment; that Mitchell protested his innocence, but submitted to the judgment of his counsel; that the facts and circumstances indicated strongly that Mitchell knew nothing about the manufacture or sale of the liquors and had no part therein. On behalf of defendant it is argued that the confession is a deliberate declaration or admission that the fact of guilt was true, and therefore conclusive.

A confession in a criminal case may be received in a civil cause between other parties as evidence of an admission of guilt, but it is not conclusive. "But if a defendant has *pleaded guilty* in a criminal case, the judgment entered upon such plea may be received as an *admission,* although it is not conclusive." Jones on Evidence, Vol. 3, Sec. 589. An admission made in another suit, not in the one between the parties then being tried, is an extra-judicial admission and is not conclusive upon the party by whom made, but may be met by other evidence. *Teter* v. *Moore,* 80 W. Va. 443. The weight of extra-judicial admissions is to be ascertained by the circumstances connected with them. *Tabb's Curator* v. *Cabell,* 17 Gratt. (Va.) 160. The general rule supported by the vast weight of authority is stated in 22 C. J. 423, Sec. 506, as follows: "A party to an action is not concluded by an admission made by him or by one whose admission affects him,

in the course of another action, but such admission may be explained or contradicted.'' The weight to be given such admission, which is generally recognized as highly satisfactory, is ultimately for the jury in view of the circumstances under which it was made. By defendant's instruction No. 3 the jury was told to find for defendant if they believed that Mitchell engaged in the manufacture of intoxicating liquors .to be used as a beverage, after the original contract of insurance sued on had been issued to him. The jury's finding concludes that question of fact against defendant.

On the other pleas that Mitchell came to his death in consequence of a personal altercation in which he was the aggressor and that his death was occasioned by a violation of law or attempted violation of law, the evidence tends strongly to support the contention that the son Oscar shot and killed his father, Charles A. Mitchell, under the impression that his father intended to do him some great bodily harm. The evidence is by no means conclusive that C. A. Mitchell was the aggressor, or that he was violating or attempting to violate the law. Defendant's instruction No. 5 fairly presented this issue to the jury.

The other points of error relating to the introduction and rejection of evidence will not be considered, as the particular evidence introduced or rejected was not specified as ground for setting aside the verdict, nor saved by special bills of exception. *State* v. *Noble,* 96 W. Va. 432.

We think the instructions given on the part of defendant sufficiently covered its theories of defense, and we perceive no reversible error in the refusal of instructions offered by it and refused.

Perceiving no reversible error, the judgment is affirmed.

*Affirmed.*