# CHARLESTON.

HERBERT MANGUS V. PROCTOR-EAGLE COAL COMPANY.

Submitted February 1, 1921.   Decided February 15, 1921.

1.   MASTER AND SERVANT—*Infant Working on Incline Outside Excavation Held Unlawfully Employed in "Mine."*

By virtue of the interpretation provision of ch. 15-h of the Code, as amended by ch. 10 of the Acts of 1915, it being sec. 36-e (4) of said chapter of the Code of 1918 and sec. 85 of said chapter of the Acts of 1915, the word "mine" in sec. 24 of ch. 15-h, Code, inhibiting the employment of boys under fourteen years of age in any coal mine, extends to and includes an incline plane on which coal cars from the mining excavation, or under-ground mining operations, are drawn up to the tipple; wherefore the employment of a boy under said age in work on such incline plane, is unlawful.   (p. 719).

2.   SAME—*Compensation Act Inapplicable to Injury to Minor Illegally Employed in Mine.*

In such case, neither the employer nor the employee can have the benefit of the Workmen's Compensation Act, ch. 15-p, Code.   (p. 721).

3.   SAME—*Injury to Minor Illegally Employed in Mine Prima Facie Evidence of Negligence.*

Injury of the employee in the course of his employment, in such case, makes out a *prima facie* case of injury to him by negligence on the part of the employer.   (p. 722).

Error to Circuit Court, Logan County.

Action by Herbert Mangus against the Proctor-Eagle Coal Company to recover for personal injuries.   Verdict for plaintiff, and from an order setting the verdict aside, he brings error.

*Reversed and rendered.*

*D. B. Daugherty* and *Lilly & Shrewsbury,* for plaintiff in error.

*E. L. Hogsett* and *Chafin & Estep,* for defendant in error.

POFFENBARGER, JUDGE:

This writ of error brings here for review an order setting aside a verdict for $3,000.00, returned in an action for a personal

injury, based upon the theory of an unlawful employment of the plaintiff, an infant under fourteen years of age, and consequent denial of the benefit of the Workmen's Compensation Act, to the defendant, a coal mining corporation and a subscriber and contributor to the Workmen's Compensation Fund, at the time of the employment and injury.

The injury consisted of a fracture of one of the plaintiff's legs, below the knee, and it occurred outside of the mine, if the term "mine" is limited to the excavation from which the coal is taken, including the entries, rooms, haulways, etc. The plaintiff had been employed as a water carrier for the men working on and about the tipple and as a sort of "jim-hand." He was hurt while engaged in the hooking of loaded coal cars to a rope or cable by which they were drawn upon the tipple. The cars were drawn from the mine by an electric motor and thrown on the track leading up the incline, to the tipple, by means of a "flying switch." While the plaintiff was attaching cars on the incline, others were thrown on to the track behind them, and they pushed the standing cars forward, with the result that his leg was caught by the wheels and broken as aforesaid.

Evidence of the plaintiff to the effect that he had "trapped" inside of the mine, for a day or two, a few days before he was hurt, was excluded by the court. Exclusion thereof was made the ground of an exception, but it is not relied upon in argument nor made the basis of an assignment of error. As we have it now, the controversy turns upon the legal question, whether the plaintiff was, at the time of his injury unlawfully employed in a coal mine, within the meaning of the statute inhibiting employment of any boy "under fourteen years of age * * * in any coal mine." Code, ch. 15H, sec. 24. Being of the opinion that he was not and that his rights and remedies in the premises were given, prescribed and governed exclusively by the Workmen's Compensaton Act, the court set aside the verdict.

In a very carefully considered decision, the statute has been construed as not inhibiting employment of boys, to do work for a mine operator on the outside of his excavations, such as the carrying of water, drying of sand and labor on a fill or on

a bone table. *Daniels* v. *Fuel Company,* 79 W. Va. 255, following the rule of strict construction applied in *Rhodes* v. *J. B. Coal Co.,* 79 W. Va. 71. Since the cause of action involved in that case arose, however, chapter 15H of the Code has been amended in a way that may change the meaning of the phrase "in any coal mine." By chapter 10 of the Acts of 1915, said chapter of the Code was completely revised, amended, and re-enacted, and the new matter incorporated in it includes a definition of the word "mine," reading as follows: "In this act the term 'mine' includes the shafts, slopes, drifts or incline planes connected with excavations penetrating the coal stratum or strata, which excavations are ventilated by one general air current or divisions thereof, and connected by one general system of mine railroads over which coal may be delivered to one or more points outside the mine, when such is operated by one operator." Acts, 1915, ch. 10, sec. 85 ; Code, 1918, ch. 15H, sec. 36e (4).

The word "act" in the portion of said section just quoted, means ch. 10 of the Acts of 1915, now ch. 15H of the Code of 1918, because said chapter 10, completely revising, amending and re-enacting said chapter of the Code, contains said section and it had never been previously used in that chapter or in any other act pertaining to labor and mining. Hence, the legislative definition necessarily applies to the word "mine" wherever it is found in the chapter. It says in this act, anywhere in the act, the term "mine" shall have a certain meaning. It cannot be limited to certain provisions thereof, without departure from, or contradiction of, the terms used. If it had been previously incorporated in some act limited to certain subjects, which, by the act of 1915, was consolidated with another separate act inhibiting employment of boys under fourteen years of age, in coal mines, it might be possible to say it was not intended for application to the word "mine" in such other act, nor to it wherever found in the chapter formed by consolidation. As to this we make no inquiry, for there was no such limited use of the definition, nor consolidation of acts. As one definition was put into the revising and enlarging act, dealing with ch. 15H, there is nothing in the definition or the chapter, by which legislative intention to make it applicable to

some provisions and not to others, is indicated.   There is no rule of interpretation known to us, that warrants a construction variant from plain terms of a statute, in the absence of something in the nature of the subject matter or the context, upon which a presumption of legislative intention to limit or restrain such terms can reasonably be founded; and the basis of such a presumption must be firm and sure in reason and purpose.

It is not perceived that limitation of the terms can be predicated on the relative unimportance of the subject matter of sec. 24 of the chapter.   That argues nothing against intention to include it.   If it could be so excluded, many others could be excepted upon the same ground, and, in that way, a large portion of the chapter could be withdrawn, and for no reason other than relative unimportance.   That is not a difference in nature of subject matter and no manifest difference of purpose is perceptible.   Presumptively, boys are excluded from mines on account of the danger incident to the employment.   For the same reason, the employment of men in coal mines is peculiarly regulated by statute.   As regulatory measures of employment of others extend to the limits of the definition, consistency requires, or at least does not forbid, coextensive regulation of the employment of boys.

In scope, the statutory definition of "mine" clearly includes the incline on which the plaintiff was working when hurt.   In express terms, it embraces the "drifts or incline planes connected with excavations."   Drift and incline planes are used in the same general sense.   Each is the way provided for bringing the coal from the mouth of the mine to the tipple.   The cars may drift by gravity or they may be drawn up an incline plane, or they may reach the tipple partly by drift and partly by draft.   Ordinarily, the cars go down grade from the mouth of the mine to the tipple.

This interpretation of the statute results in the conclusion that the ground upon which the court set aside the verdict is untenable.   As the employment of the plaintiff was unlawful, the defendant's subscription to the Workmen's Compensation Fund afforded it no immunity from liability for injury to him by its negligence.   In the case of an unlawful employment, neither party to the contract is protected by the Workmen's

Compensation Act. Code, ch. 15P. sec. 9; *Barnett* v. *Coal & Coke Ry. Co.,* 81 W. Va. 251.

The unlawfulness of the employment and injury of the employee in the course thereof make out a *prima facie* case of injury by negligence of the employer. *Norman* v. *Virginia-Pocahontas Coal Co.,* 68 W. Va. 405. There is no claim, in argument, that such case was overcome or repelled by proof, and we perceive nothing in the evidence that precludes right of recovery on the ground of such negligence.

Upon these principles and conclusions, the judgment complained of will be reversed, the verdict reinstated and judgment for the plaintiff rendered thereon.

*Reversed and judgment rendered.*