# CHARLESTON.

## CHARLES BURDETTE *v*. JOSEPH HENSON

Submitted March 11, 1924.     Decided March 18, 1924.

1. MASTER AND SERVANT.—*Declaration Charging Negligence of Servant Acting Within Scope of Authority Held Sufficient on Demurrer.*

   A declaration which alleges that defendant's servant acting within the scope of his authority did the acts of negligence complained of, and that by reason of such negligent acts of defendant the plaintiff sustained the damages claimed, without directly alleging that defendant did such acts, is sufficient on demurrer. (p. 32).

2. MUNICIPAL CORPORATIONS.—*Statutory Right of Way of Vehicle Approaching Intersection Held Not to Dispense With Use of Reasonable Care.*

   Where the statute gives right of way to a driver approaching an intersecting highway from the right over vehicles ap-

proaching from the left, he is not thereby relieved of the duty to use reasonable care to avoid collision with such vehicles approaching from the left. (p. 35).

3.    SAME.—*Driver Approaching Intersection From Left May Assume Vehicle Approaching on His Right Will Use Ordinary Care.*

And the driver approaching from the left is not required to stop and give way to a vehicle in the distance coming up on his right, where he has no reason to anticipate that he can not cross the intersection in safety, but may assume that the other will exercise due care in approaching and crossing the intersection. (p. 36).

Error to Circuit Court, Kanawha County.

Action by Charles Burdette against Joseph Henson. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Claude L. Smith,* for plaintiff in error.

MILLER, JUDGE:

Defendant in this action has prosecuted this writ of error to a judgment against him for the sum of $300.00. The errors assigned are: That the declaration is not sufficient; that the evidence does not sustain the verdict; and that the trial court erred in refusing to give to the jury certain instructions offered by defendant.

The declaration alleges that, as plaintiff was traveling in his automobile along one of the streets of the city of Charleston, at a street crossing, an agent and employee of defendant, acting within the scope of his authority, who was driving defendant's motor truck at an excessive and dangerous rate of speed, carelessly, negligently, wrongfully, recklessly and unlawfully ran defendant's said truck upon and against said automobile of plaintiff, and upon and against the body of plaintiff with great force and violence, injuring and damaging plaintiff's said automobile, and greatly injuring plaintiff about his head, body and limbs, causing him to suffer great physical pain and mental anguish, and to lay out and expend a large sum of money in and about endeavoring to be cured of his said hurts so caused by the reckless and

negligent act of defendant as aforesaid; and plaintiff says that by reason of said reckless and negligent acts of defendant, plaintiff's automobile was injured and damaged to the amount of one thousand dollars, and by reason of said hurts, wounds and bruises he was damaged in the amount of one thousand dollars.

It is said that the declaration does not allege that the defendant committed the acts complained of, and does not aver ownership of the truck in defendant. But, it is alleged that the servant, acting within the scope of his authority, while driving defendant's truck, negligently ran it upon plaintiff's automobile, and by reason of the reckless and negligent act of defendant, plaintiff sustained the injuries complained of. The master is liable for the acts of his servant done within the course of the latter's employment. This is a rule of law, and not a fact to be pleaded. All the facts necessary to render the defendant in this case liable for the acts of his servant are alleged in the declaration. The facts constituting the relationship of master and servant are alleged, and the wrongful acts of the servant are set out.

Plaintiff testified that he was driving his automobile southward on Glenwood Avenue, and that when he came to the intersection of Main Street, which crosses Glenwood Avenue at right angles, he looked westward, to the right, and saw defendant's truck coming up Main Street, a distance of one hundred yards from the intersection when he started to cross Main Street: that the truck was traveling, in his opinion, 25 or 30 miles per hour; that he thought he had plenty of time to cross the street, 30 feet wide from curb to curb, and would have had time to get across, if defendant's driver had not been coming at an excessive rate of speed; that he did start to cross, but when just beyond the center of the street, he saw that the truck would strike his car, and in order to avoid it he increased his speed and turned to the left, but the truck struck the rear end of his automobile, turning it around and driving it 39 feet up Main Street; that the truck then turned to the right and ran for a distance of 70 feet on the sidewalk before the driver regained control and ran it back into the street. Plaintiff says he was driving about six or

seven miles per hour. A passenger in plaintiff's car corroborated him in the facts detailed above, except as to minor differences in distances. Both say that defendant's truck was running about thirty miles an hour, and that the driver was looking across the sidewalk at some boys, who were "having some words there." The distance the automobile was thrown, and the distance the truck ran along the sidewalk, are corroborated by other witnesses, who came to the scene of the accident a few minutes later. A lady who was on the sidewalk 12 feet from the point where the accident occurred, testified that the truck was going pretty fast and that plaintiff's car was moving slowly.

Defendant's son, the driver of the truck, says that he was going up Main Street between seven and ten miles an hour "on the right hand side of the street. Mr. Burdette's car, when I come up in about—it must have been—20 or 30 or 40 feet of the corner, I looked to the left and I saw a car coming, so I thought, 'Well, I don't know whether he is going to stop or slow up or what he was going to do,' but I had plenty of time to get across the street corner. If I had gone he would have hit me and I slipped on the brakes on this big heavy two ton truck, which won't make over fifteen miles an hour, which has a governor on it. He got a little ahead of me and cut through to the left and made a circle out around. I also cut to the left to miss him. I did everything I could to miss him. He couldn't get far enough across, and I hit the tail of his car. When I did that, his car then, making the speed he was making, it kind of threw the front end of my truck over and it jarred me off my seat—not off the seat but away from the steering gear and my foot off the brakes, and before I got control of it the truck went up on the sidewalk, not over 45 feet up the street. And I got control of it, and cut it off and stopped it." This witness insists that he was looking straight ahead, and not to the side of the street, and that he did not travel over 45 feet after striking plaintiff's car, and that the latter was not driven more than 20 feet by the compact. He and his father, the defendant and owner of the car, say that the truck was equipped with a governor, which controls the engine and will not permit the car to run

over fifteen miles per hour, and that the governor was in good working order.

Defendant contends that under section 96 (i) of the state road law, chapter 43 Barnes' Code 1923, the driver of his car had the right of way, and that plaintiff was guilty of gross negligence in failing to comply with the law. This section reads: "An operator of a vehicle shall have the right of way over the operator of another vehicle who is approaching from the left in an intersecting highway, and shall give the right of way to an operator of a vehicle approaching from the right on an intersecting highway." This does not mean that one approaching an intersecting highway from the left must on all occasions stop until vehicles in sight coming up on his right have passed, without regard to the distance such vehicles may be from the intersection when he sees them. He has the right to take into consideration the distance of the other vehicle from the intersection and the speed at which it is traveling, and may presume that the driver of the other vehicle will observe the law as well as himself. "One of the difficulties involved under such a regulation is determining when one approaching from the right can be said to be 'approaching the intersection.' * * * The violation of traffic regulations of this character is to be considered on the question of the negligence of the parties, and, like other violations of the law of the road, may create a presumption of negligence against the guilty traveler. It still remains, however, the province of the court and jury to determine whether the respective parties have exercised the degree of care imposed on them; and the fact that one party is entitled to priority does not relieve him from the duty of exercising reasonable care to avoid injury to other travelers. The driver not entitled to priority may properly assume that the other will not approach at an excessive speed. One entitled to priority under the law is nevertheless required to keep a lookout for cars approaching from his left; and, if he fails in this respect, he may be charged with negligence." Huddy on Automobiles, (6th ed.), §394. "Such a regulation is designed to prevent accidents and not to excuse them and relieves drivers from no duty of care imposed on them before. One approaching a crossing is still bound to look to the left for approaching

vehicles as well as to the right and if the vehicle approaching from the left reaches the crossing first it has the right of way." Babbitt on Automobiles, (3rd ed.), §535. The same authority also says, §536, that where an ordinance gives cars going north and south right of way over those moving east and west, a driver proceding east or west is not required to yield to one going north or south who is some distance away and bound by law to slow down. The texts above quoted are fully supported by the cases cited in connection therewith. See, also, Berry on Automobiles, (3rd ed.), §§814-818; *Neumann* v. *Apter,* 95 Conn. 695, 21 A. L. R. 970, and note at page 974.

In view of the authorities examined, and the conflicting evidence adduced on the trial of the action, we are of opinion that the question of negligence was one for the jury to determine, and that their verdict is supported by the evidence.

The only instructions offered appearing in the record are defendant's instructions numbers one, five and eight, all rejected by the trial court. It does not appear whether or not any instructions were submitted to the jury.

Instruction number one, a peremptory instruction to find for defendant, was rightly refused.

Instruction number five would have told the jury that if they believed from the evidence that two ways were open to plaintiff, the one safe and the other dangerous, and the plaintiff chose the dangerous one, then he could not recover and the verdict must be for defendant. This instruction is not supported by the evidence. It does not appear that two ways were open to plaintiff. The only application this instruction could have would be to the manner in which plaintiff crossed the intersection, and not to a "way" open to him. There is no evidence that plaintiff was driving recklessly or rapidly, or that he stopped or slowed up on the intersection The evidence does show that he speeded up and turned to the left in order to avoid the accident when he saw the danger.

Defendant's instruction number eight as offered would have told the jury that if they believed from the evidence that the plaintiff saw defendant approaching Glenwood Avenue, and that he could have stopped or turned aside his auto-

mobile, and could have with reasonable care avoided the accident, and that his failure to do so contributed as one of the causes to the accident, then the jury must return a verdict in favor of the defendant. Plaintiff was under no duty to stop or turn aside because he saw defendant's truck approaching, if it was in the distance at the time he entered the intersection. Of course, if he had stopped and waited for the truck to pass, the accident would have been avoided. He says he saw the truck when he reached the intersection, but that it was so far away he would have had time to cross the street if it had been approaching at a proper speed. To bar recovery plaintiff's act of alleged negligence must be such as he could, under the circumstances, reasonably anticipate would result in his injury. 10 Enc. Dig. Va. & W. Va. Rep. 388, and cases cited; Id. 375. Plaintiff's negligence, to bar recovery, must be the proximate cause of the injury. Id. 386. In *Downey* v. *Railway Co.*, 28 W. Va. 732, we held that: "Though the plaintiff may have been guilty of negligence, and although that negligence may in fact have contributed to the injury, yet if the defendant could by the exercise of ordinary care and diligence have avoided the injury, the plaintiff's negligence will not excuse or relieve the defendant from liability." Defendant's driver says that he saw plaintiff's car, but didn't know whether plaintiff was going to slow up or stop or what he was going to do. After the danger of a collision became imminent, the truck driver was in a position to do as much to avoid the accident as was plaintiff, unless his excessive speed prevented him from stopping. We are of opinion that, under the law as to the relative duty of the two drivers at the intersection of the streets, in the light of the facts and circumstances, this instruction was improper.

The judgment will be affirmed.

*Affirmed.*