FOREST W. MOORE, *Administrator of the Estate of Stanley Ferrari, Deceased*

*v.*

SKYLINE CAB, *Inc., et al.*

(No. 10186)

Submitted February 7, 1950. Decided March 21, 1950

122

GIVEN, JUDGE, dissenting.

*Salisbury, Hackney & Lopinsky, Samuel D. Lopinsky, John G. Hackney,* for plaintiffs in error.

*Dayton, Campbell & Love, Ernest H. 'Gilbert, Jr., Thomas W. Moses,* for defendant in error.

HAYMOND, JUDGE:

Early in the morning of Sunday, August 8, 1948, Stanley Ferrari, a young married man and the father of three small children, was fatally injured in a collision between an automobile driven by him and a taxicab, owned by the defendant, Skyline Cab, Inc., and operated by its employee, the defendant Lewis Hissom, at the intersection of Court Street and Virginia Street, two public thoroughfares, in the City of Charleston, Kanawha County. In an action for wrongful death, instituted by the plaintiff, Forest W. Moore, administrator of the estate of Stanley Ferrari, in the circuit court of that county, the jury returned a verdict against both defendants for $10,000.00, upon which the court entered the judgment of which the defendants complain on this writ of error.

The decedent Stanley Ferrari, who was regularly employed on night shift at the Nitro plant of the Monsanto Chemical Company, did not work at his employment on August 7, 1948. Shortly before eight o'clock in the eve-

ning of that day he left his home, outside the City of Charleston, ostensibly for the purpose of going to his work that night at the plant, accompanied by his cousin, Estil McClanahan, in Ferrari's automobile. Instead of going to his work at Nitro, Ferrari and his companion stopped at two resorts in Charleston where intoxicants were sold and where they spent their time until shortly before the wreck in which Ferrari was fatally injured occurred, sometime between two o'clock and four o'clock the following morning. At the places at which they stopped Ferrari's companion drank enough to become somewhat intoxicated but, other than the presence of some bottles of beer in his automobile after the collision, there is no indication that Ferrari drank any intoxicants at any time. After they left the second place at which they had stopped and immediately before the wreck, Ferrari drove his automobile, in which his companion was riding in the front seat, south on Court Street, which extends to Kanawha Boulevard and crosses at a right angle Virginia Street, a main thoroughfare, which runs east and west in the city. While proceeding in a southerly direction across Virginia Street toward Kanawha Boulevard, the Ferrari automobile and the taxicab driven by Hissom, which was traveling east on Virginia Street, collided near the center of the intersection of the two streets. The front end of the taxicab struck the right side of the automobile at its front door and caused it to turn on its left side and come to rest a short distance from the southeast corner of the intersection. Neither occupant of the Ferrari automobile was injured by the impact of the automobiles. The driver of the taxicab and a deputy sheriff, who was near the southwest corner of the intersection when the collision occurred, went to the automobile and succeeded in getting Ferrari's companion, who had been riding on the right side of the front seat, from the automobile, which caught fire almost immediately after the automobiles came together. They were unable to extricate Ferrari from the lower or left side of the automobile before he received the burns from which he died in a hospital shortly after the accident. At the time of the collision the traffic light

at the intersection was not burning and there was no traffic in or near the intersection except the two automobiles involved in the wreck. The headlights on both automobiles were burning at the time, but the lights on the Ferrari automobile were dim. The intersection at which the collision occurred is in the "congested district" of the city and, by a section of a municipal ordinance which was introduced in evidence, the speed of vehicles in that area is restricted to fifteen miles per hour.

On the northwest corner of the intersection is a building which extends to the building line of each of the streets. The first story of this building is occupied by a drug store and there is a large glass window fronting on each street. The location of the building obstructs the view west on Virginia Street of the driver of an automobile as it approaches the intersection from the north on Court Street until the automobile reaches the entrance to the intersection. Directly across Court Street from the drugstore and at the northeast corner of the intersection is an automobile service station which sets back from the building lines of the lot and the vacant portion of the lot affords a view east along Virginia Street to the driver of an automobile approaching the intersection on Court Street from the north. On the southeast corner of the intersection is the Charleston City Hall and, opposite this building, on the southwest corner of the intersection, is the Kanawha County Court House. There is a traffic light at the intersection, but there are no stop signs on Court Street at the entrance to the intersection.

As to the speed at which each of the automobiles was traveling at the time of the collision and just before it happened, the evidence is in sharp conflict. Four eye witnesses testified at the trial. One of them, a deputy sheriff, testified in behalf of the plaintiff. The other three, the defendant Hissom, who was driving the taxicab, a woman passenger in the taxicab, and the man who was riding with Ferrari, testified as witnesses for the defendants. Two other persons who did not see the collision,

but heard it and saw either the taxicab or the Ferrari automobile shortly before it happened, also testified.

A witness for the plaintiff, a city police officer, testified that about three o'clock in the morning, and a short time before the collision, he drove a patrol car south on Court Street to the intersection; that he was on his way to the city building; that when he reached the entrance to the intersection he stopped, looked west on Virginia Street, and saw a taxicab traveling east at a point twenty to thirty feet west of the west end of the city block on his right; that the speed of the taxicab at that point was twenty to twenty five miles per hour; that there was no automobile behind his automobile and no traffic on Court Street south of the intersection or on Virginia Street east of the intersection; that because of the distance of the taxicab on Virginia Street to the west of the Court Street intersection with Virginia Street he drove upon the intersection, turned east on Virginia Street and entered an alley from Virginia Street to the city garage just east and at the rear of the city building; that after he had turned east on Virginia Street he heard the taxicab make a noise which "sounded like a bucket" being dragged on the street; that when he had gone to the garage he heard someone cry "Fire"; that he came through the city building to Virginia Street to the scene of the wreck and saw the Ferrari automobile on its side in the intersection with its wheels pointed south, and also observed the taxicab and the injured man who was taken in an ambulance to the hospital. This witness did not see the collision or the Ferrari automobile until after the collision had happened.

Another witness for the plaintiff, a deputy sheriff who saw the collision, testified that he came out of the front entrance of the court house about one hundred feet west of the Court Street intersection and that he walked east along Virginia Street to the southwest corner of the intersection; that he saw the Ferrari automobile traveling south on Court Street as it approached the intersection; that it slowed down but did not stop and came into the intersection going south across Virginia Street; that he

heard the noise made by the tires of the taxicab and noticed it coming east on Virginia Street; that he first saw it when it was near the intersection in the block west of the Court Street intersection; that the speed of the taxicab was from forty to sixty miles per hour; that the Ferrari automobile was traveling in low or second gear and was crossing the intersection when he first saw the taxicab west of him on Virginia Street; that the taxicab, when on the intersection, hit the Ferrari automobile which continued to run for "about the length of itself" and then "turned over"; and that the taxicab, after it struck the Ferrari automobile, "bounced back" ten to twenty feet. This witness stated that he did not see the patrol car which the police officer testified he drove across the intersection shortly before the collision.

The defendant Hissom, the driver of the taxicab, testified that he went from his stand at Five Corners to Roane Street for a passenger who wanted to go to Darst Street in the eastern section of Charleston; that he drove with the passenger on Roane Street to Pennsylvania Avenue and then came into Virginia Street; that as he traveled east on Virginia Street he saw the patrol car enter the intersection from Court Street, proceed on Virginia Street, and turn into the alley just east of the city hall; that as he came to Court Street the Ferrari car came "dashing right in front of me, just there before I knew how it got there, and so of course we had an accident"; that he had his "feet on the brakes" of the taxicab when it hit the Ferrari automobile; that the taxicab did not "go anywhere after the impact"; that he was driving near the center of the street at a speed of twenty to twenty five miles per hour; that he did not notice any lights on the Ferrari car; and that it was traveling at thirty to thirty five miles per hour as it came into the intersection. The passenger in the taxicab corroborated the driver concerning the trip from Roane Street to the scene of the collision. She testified that as the two automobiles came upon the intersection the speed of each was about twenty five miles per hour; that the Ferrari automobile "was just in front of us all of a sud-

den"; and that the taxicab did not "go any distance at all after the impact". The other eyewitness to the collision, the man who was riding in the front seat of the automobile driven by Ferrari, testified that when it came out Court Street and started across Virginia Street Ferrari "kind of checked but he never stopped. I don't know whether he shifted gears or not, and he come across, come right on and the light flew up in my face and I seen this taxi coming and it struck us right where I sat, at the door."; and that Ferrari drove into the intersection at a speed of twenty to forty miles per hour. Another witness produced by the defendants testified that in crossing Court Street on foot at a point about one hundred feet north of the intersection, he saw the Ferrari automobile going south on that street; that he waited for it to pass him; that at that time it was "making about 25 miles an hour, more or less"; that after the automobile passed him, he heard a crash; and that he went immediately to the scene of the collision and saw the Ferrari automobile "burst into flame".

During the cross-examination of the defendant Hissom he was asked if he was by nature a careful driver and if he observed speed limits at all times. To these questions he gave affirmative answers. Over objection he was then asked if he had not, in July, 1946, pleaded guilty to a charge of reckless driving and paid a fine for that offense. His answer was in the affirmative. The defendants excepted to this answer and moved that it be stricken. This motion the court overruled.

By their assignments of error the defendants seek reversal of the judgment on these principal grounds: (1) Instruction No. 1, offered by the plaintiff and given by the court, should have been refused; (2) certain instructions, including a peremptory instruction to find for the defendants, offered by the defendants and refused, should have been given, and one instruction, modified and given by the court, should have been given without modification; and (3) the evidence of the plea of guilty by the

defendant Hissom to the charge of reckless driving on a prior occasion should have been excluded.

Instruction No. 1, offered by the plaintiff and given by the court over specific objections by the defendants, was a binding instruction. In substance it told the jury that if the jury believed from all the evidence that the defendant Hissom, as agent and employee of the defendant, Skyline Cab, Inc., drove the taxicab into the intersection at a speed in excess of twenty miles per hour and without due regard for the safety and the convenience of other vehicles, the defendants "are guilty of negligence as a matter of law" and that if such negligence directly caused the death of Ferrari, the jury should find for the plaintiff, even though the jury should believe that Ferrari was negligent in failing to come to a complete stop before entering Virginia Street from Court Street, or in driving at an excessive rate of speed, unless the jury should further believe that the negligence of Ferrari was a direct and proximate cause of his death. The instruction misstates the law with respect to negligence of the defendants and contributory negligence of the plaintiff. Since the case of *Norman* v. *Virginia-Pocahontas Coal Company,* 68 W. Va. 405, 69 S. E. 857, 31 L. R. A. (N.S.) 504, this Court has repeatedly held that disregard of a requirement of an ordinance or a statute is not negligence as a matter of law but is prima facie actionable negligence when it is the natural and proximate cause of an injury. *Norman* v. *Virginia-Pocahontas Coal Company,* 68 W. Va. 405, 69 S. E. 857, 31 L. R. A. (N.S.) 504; *Mangus* v. *Proctor-Eagle Coal Company,* 87 W. Va. 718, 105 S. E. 909; *Bobbs* v. *Morgantown Press Company,* 89 W. Va. 206, 108 S. E. 879; *Tarr* v. *Keller Lumber and Construction Company,* 106 W. Va. 99, 144 S. E. 881, 60 A. L. R. 570; *Oldfield* v. *Woodall,* 113 W. Va. 35, 166 S. E. 691; *Skaff* v. *Dodd,* 130 W. Va. 540, 44 S. E. 2d 621; *Rich* v. *Rosenshine,* 131 W. Va. 30, 45 S. E. 2d 499. The instruction is based in part, at least, upon the disregard by the defendants of the speed limit imposed by the ordinance which at the place of the collision was fifteen miles per hour, instead

of twenty miles per hour at the intersection as incorrectly stated in the instruction, and, as the instruction in effect told the jury that the violation of the speed limit and the disregard of the safety and the convenience of other vehicles, by the defendants, rendered them guilty of negligence as a matter of law, it was, for that reason, under the holdings in the above cited cases, prejudicially erroneous and should have been refused. The language of the instruction to the effect that if the jury believed that Ferrari was guilty of negligence, such negligence on his part must have been "a direct and proximate cause of his death" in order to bar recovery by the plaintiff, incorrectly stated the law of contributory negligence. On that point the instruction should have told the jury that in order to bar recovery by the plaintiff the negligence of Ferrari must have proximately contributed to his death.

No error appears in the action of the trial court in refusing to give instructions offered by the defendants designated as 3, 4, 9, 10 and 11, or in refusing to give Instruction 5 in its original form and in giving it as modified. The substance of Instructions 3, 4 and 10 was covered by Instruction 5, given as modified by the court. These instructions dealt with contributory negligence and were to the effect that if Ferrari in violation of the city ordinance in entering the intersection of Virginia Street, a through street, did not stop his automobile, or yield the right of way to the taxicab, he was prima facie guilty of contributory negligence and that, if such negligence proximately contributed to the death of the decedent, the plaintiff could not recover. Instruction 5, as modified, sufficiently covered the theory of the defendants on that question. The duplication of instructions is neither necessary nor desirable. *Davis* v. *Pugh,* 133 W. Va. 569, 57 S. E. 2d 9; *Skaff* v. *Dodd,* 130 W. Va. 540, 44 S. E. 2d 621; *State* v. *Humphreys,* 128 W. Va. 370, 36 S. E. 2d 469; *Franklin* v. *Pence,* 128 W. Va. 353, 36 S. E. 2d 505; *Robertson* v. *Hobson,* 114 W. Va. 236, 171 S. E. 745; *Drake* v. *Clay Hardware and Supply Company,* 110 W. Va. 63, 157 S. E. 35. The court modified the statement in Instruction 5,

as originally offered, that if the prima facie negligence of the plaintiff proximately contributed "in any manner" to the death of the decedent, the plaintiff could not recover, by substituting for the words "in any manner" the words "in any degree" and gave the instruction with that modification. As so modified it was not materially changed. Instruction 9 related to the effect of the action of the parties in vouching for the veracity of the witnesses produced by them and the effect of contradictions or inconsistencies in the testimony of witnesses for the plaintiff with respect to the ability of the jury to determine whether the preponderance of the evidence was with the plaintiff or the defendants and whether the plaintiff had failed to carry the burden of proving his case by a preponderance of the evidence. It would have improperly instructed the jury upon the weight of the evidence and, for that reason, it was properly refused. Instruction 11 would have told the jury that in offering the testimony of certain witnesses the plaintiff vouched for their veracity and that the law did not permit him to discredit or impeach them. It does not appear that the plaintiff attempted to impeach any witness who testified in his behalf and the instruction would have submitted a question of law to the jury. The action of the court in refusing the instruction was proper.

The controlling question in this case is presented by the refusal of the court to give Instruction 1, a peremptory instruction, which would have directed the jury to return a verdict in favor of the defendants. As already indicated, the uncontradicted evidence is that Ferrari did not stop before entering the intersection, or yield the right of way to the taxicab which on a through street was approaching the intersection on his right. His conduct in both these particulars violated the ordinance. The clear preponderance of the evidence is that he came upon the intersection at a speed in excess of the limit prescribed by the ordinance. It is also clear that he drove into Virginia Street without looking west while traveling on Court Street to detect the presence of the oncoming taxi-

cab the headlights of which he must have seen if he had looked. It is manifest from the evidence that if he had stopped or looked, as it was his duty to do, before he drove into the intersection, the collision would not have occurred, and that his failure to observe this duty proximately contributed to the collision which resulted in his death. These material facts are clearly established and the evidence which bears upon them is undisputed. Though the evidence indicates, and the verdict of the jury establishes, the primary negligence of the driver of the taxicab, under the evidence, as disclosed by the record, Ferrari was guilty of contributory negligence. When the material facts are undisputed and reasonable men can draw but one conclusion from them, contributory negligence is a question of law for the court. *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Taylor* v. *City of Huntington,* 126 W. Va. 732, 30 S. E. 2d 14; *Jackson* v. *Chesapeake and Ohio Railway Company,* 110 W. Va. 568, 159 S. E. 517; *McLeod* v. *Charleston Laundry Company,* 106 W. Va. 361, 145 S. E. 756; *Coleman* v. *Norfolk and Western Railway Company,* 100 W. Va. 679, 131 S. E. 563; *Daniels* v. *Chesapeake and Ohio Railway Company,* 94 W. Va. 56, 117 S. E. 695. In consequence, the refusal of the court to give the peremptory instruction requested by the defendants constituted reversible error.

One of the assignments of error challenges the correctness of the ruling of the trial court in requiring the defendant Hissom to answer a question, propounded on cross-examination by the attorney for the plaintiff, by which he was asked if he had pleaded guilty to a charge of reckless driving preferred against him in July, 1946, and paid a fine for that offense, which question he answered in the affirmative. The defendants interposed a general objection to the question and moved to strike the answer. The defendants now insist, as a ground of objection, that the plaintiff, by asking Hissom if he was by nature a careful driver and if he always observed speed limits when driving an automobile, to which questions he gave affirmative replies, and by then inquiring about

his plea to the prior offense, transcended the limits of proper cross-examination, made the defendant his witness as to the subject matter of the preliminary questions and answers, and improperly attempted to impeach his own witness. As the foregoing inquiries were within the scope of legitimate cross-examination, the contention of the defendants on that point is without merit. To test the credibility of a witness is a fundamental element of cross-examination. *State* v. *Friedman*, 124 W. Va. 4, 18 S. E. 2d 653. As affecting the credibility of the defendant Hissom, as a witness, evidence of his plea of guilty to a prior offense was admissible. *State* v. *Taylor*, 130 W. Va. 74, 42 S. E. 2d 549; *State* v. *McMillion*, 127 W. Va. 197, 32 S. E. 2d 625; *State* v. *Mullenax*, 124 W. Va. 243, 20 S. E. 2d 901; *State* v. *Friedman*, 124 W. Va. 4, 18 S. E. 2d 653. It was competent, however, for that limited purpose only. It was not competent for the purpose of establishing negligence of the defendant in connection with the collision. Evidence of the conviction of an offense growing out of conduct of a defendant which forms the basis of a civil action for negligence can not be used in such action as proof of negligence upon the part of the defendant. *Utt* v. *Herold*, 127 W. Va. 719, 34 S. E. 2d 357; *Interstate Dry Goods Stores* v. *Williamson*, 91 W. Va. 156, 112 S. E. 301, 31 A. L. R. 258; *Shires* v. *Boggess*, 72 W. Va. 109, 77 S. E. 542. A judgment rendered upon a plea of guilty arising from the same facts, however, is admissible in such civil action as an admission upon the part of the defendant which tends to establish his negligence. *Utt* v. *Herold*, 127 W. Va. 719, 34. S. E. 2d 357; *Interstate Dry Goods Stores* v. *Williamson*, 91 W. Va. 156, 112 S. E. 301, 31 A. L. R. 258; *Gillespie* v. *Modern Woodmen of America*, 101 W. Va. 602, 133 S. E. 333. As already indicated, the evidence of the plea of guilty of the defendant to the charge of reckless driving on a former and different occasion was admissible as affecting the credibility of his testimony but was not admissible to show negligence upon his part at the time of the wreck. The evidence being admissible for one purpose, however, the general objection and the motion to strike it were not sufficient to exclude it or to

limit it to the credibility of Hissom as a witness. *State* v. *Taylor,* 130 W. Va. 74, 42 S. E. 2d 549; *Utt* v. *Herold,* 127 W. Va. 719, 34 S. E. 2d 357; *State* v. *Vandetta,* 108 W. Va. 277, 150 S. E. 736; *Huff* v. *Columbia Insurance Company,* 94 W. Va. 663, 119 S. E. 854; *Depue* v. *Steber,* 89 W. Va. 78, 108 S. E. 590; *Cobb* v. *Dunlevie,* 63 W. Va. 398, 60 S. E. 384; *State* v. *Hood,* 63 W. Va. 182, 59 S. E. 971, 15 L. R. A. (N. S.) 448, 129 Am. St. Rep. 964.

For the errors indicated, the judgment of the circuit court is reversed, the verdict is set aside, and a new trial is awarded the defendants.

> *Judgment reversed; verdict set aside; new trial awarded.*

GIVEN, JUDGE, dissenting:

I agree that the giving of plaintiff's instruction No. 1 constituted reversible error, for the reasons stated in the opinion of the Court, but I cannot agree that defendants' peremptory instruction should have been given. Damron, a deputy sheriff and an experienced driver, who testified for plaintiff and who was the only witness who observed both cars immediately before the collision, stated that the taxi approached the intersection at a speed "between 40 and 60 miles" per hour; that the driver did not put on the brakes; that the taxi was near the first intersection west of where the collision occurred at the time Ferrari entered Virginia Street and that the impact from the taxi overturned the car being driven by Ferrari. Damron also testified that Ferrari, upon reaching the intersection, slowed down "real slow and then started out. I don't know whether in second gear or low gear but it changed gears. * * *"; and that the lights on both cars were burning. The defendant Hissom, driver of the taxi, admits that he was driving "from 20 to 25 miles per hour", that being five to ten miles per hour above the speed limit at the point of the accident. The jurors viewed the scene of the collision and were informed as to distances. They also observed the witnesses and could judge as to their veracity.

There was no evidence as to whether Ferrari looked in the direction from which the taxi was approaching before entering the intersection but, from the fact that he slowed down and changed gears, and from the fact that it was his duty to look, a jury would be warranted in finding that he did look.

From this evidence the jury could have found, and apparently did find, that Ferrari, before entering the intersection, slowed down "real slow", changed gears, looked west on Virginia Street, saw the taxi approaching the intersection from some distance away; that Ferrari then entered the intersection in an attempt to cross, believing that he had sufficient time to cross the intersection; that the taxi was being driven toward the intersection at a speed of forty to sixty miles per hour and did not slow down before entering the intersection.

Under these circumstances Ferrari, viewing the taxi some distance away, had the right to assume that the taxi would slow down and enter the intersection at a lawful rate of speed. *Primrock* v. *Goldenberg,* 161 Minn. 160, 200 N. W. 920, 37 A. L. R. 484. Had it done so Ferrari could have cleared the intersection before the taxi reached it. At least the jury should be permitted to determine whether, under these circumstances, the contributory negligence of Ferrari was the proximate cause of his death. To give a peremptory instruction would, in my opinion, ignore this theory of the case and all of the evidence above detailed and would be an invasion of the province of the jury. Before such an instruction should be given all of the evidence of the defendants should be disregarded and every reasonable inference given to the evidence of the plaintiff.

> " 'Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence.' *Nichols* v. *Raleigh-*

*Wyoming Coal Co.,* 112 W. Va. 85, 163 S. E. 767."
Point 2, Syllabus, *Hambrick, Admr.* v. *Spalding,*
116 W. Va. 235, 179 S. E. 807.

In my opinion the rule of law governing this case is stated in Points 2 and 3 of the syllabus in the case of *Burdette* v. *Henson,* 96 W. Va. 31, 122 S. E. 356, 37 A. L. R. 489, as follows:

"2. Where the statute gives right of way to a driver approaching an intersecting highway from the right over vehicles approaching from the left, he is not thereby relieved of the duty to use reasonable care to avoid collision with such vehicles approaching from the left."

"3. And the driver approaching from the left is not required to stop and give way to a vehicle in the distance coming up on his right, where he has no reason to anticipate that he can not cross the intersection in safety, but may assume that the other will exercise due care in approaching and crossing the intersection."

"The fact that a vehicle may have a right of way over a public road or street, does not relieve the operator of such vehicle from the duty to operate the same with reasonable care." Point 1, Syllabus, *Vaughan* v. *Oates,* 128 W. Va. 554, 37 S. E. 2d 479.

For the reasons above stated I respectfully dissent.