Hilda WEST, Administratrix of the
Estate of Marvin West,
Deceased, Appellant,

v.

The BALTIMORE & OHIO RAILROAD
COMPANY, a Delaware Corporation,
et al., Appellees.

No. 74–1583.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 5, 1974.

Decided Nov. 18, 1975.

James W. Pyles, New Martinsville, W.Va. and Jolyon W. McCamic, Wheeling, W.Va. (McCamic, McCamic & Hazlett, Wheeling, W.Va., on brief), for appellant.

J. S. Francis, Sistersville, W.Va., Robert M. Steptoe, Jr., and Howard Caplan, Clarksburg, W.Va. (Robert G. Steele, Stewart McReynolds, Clarksburg, W.Va., Brennan & Francis, Sistersville, W.Va., McReynolds & Caplan, Clarksburg, W.Va., and Steptoe & Johnson, Clarksburg, W.Va., on brief), for appellees.

Before BOREMAN, Senior Circuit Judge, and FIELD and WIDENER, Circuit Judges.

BOREMAN, Senior Circuit Judge:

The plaintiff, Hilda West, instituted this diversity action in the United States District Court for the Northern District of West Virginia against the Baltimore and Ohio Railroad Company and two of its employees (hereinafter referred to as the railroad) and the McDonough Company (hereinafter McDonough) to recover $110,000 in damages for the wrongful death of her husband, Marvin West, who was killed in a collision between a truck owned and operated by him and a train operated by the defendant railroad. The plaintiff complains that the court erred in directing a verdict in favor of all the defendants at the close of the plaintiff's case. From the judgment entered for all defendants plaintiff appeals. We affirm.

The facts indicate that the decedent was an independent truck driver in the business of hauling gravel for township roads located in the State of Ohio. He had obtained truckloads of gravel on numerous occasions over a five-year period from a gravel plant located in New Martinsville, West Virginia. This plant was owned by the defendant McDonough at the time of the fatal accident. Customers of McDonough's gravel plant must cross tracks owned by the railroad which separate the plant from the public highway. As a result of an agreement entered into by McDonough's predecessor, the Ohio Valley Sand Company, and the railroad, a crossing had been constructed in 1926 to permit access to the gravel plant. By this agreement the railroad gave permission for the construction of the crossing in return for an annual fee of $25.00 and the agreement provided that the Ohio Valley Sand Company would "exercise the highest care in the use of said crossing . . . and . . . indemnify and save harmless the [railroad] from all loss, damage, or expense [the railroad] may sustain in any manner arising by reason of the construction, maintenance, removal or existence of said crossing." After purchasing the property of the Ohio Valley Sand Company, McDonough paid the annual fee to the railroad and continued to use the crossing.

On November 21, 1970, the decedent made six trips to the McDonough plant to load gravel. His familiarity with the locale, the railroad crossing and the McDonough facilities was unquestioned. At approximately three o'clock that afternoon the decedent, having obtained his sixth load of gravel that day, drove his truck loaded with fifteen tons of gravel onto McDonough's scales to be weighed. These scales are located on the McDonough Company's land approximately forty-two feet southwest of the crossing where the accident occurred. The tracks run generally north and south and, in order to reach the crossing from the scales, vehicles must drive north off the scales, turn to the right and ascend a ten percent grade to the tracks. Looking south from the crossing, the tracks curve

southeasterly to the left but there is a clear view down the tracks from the crossing of at least five hundred feet.

After this particular load of gravel was weighed on McDonough's scales the decedent drove his loaded truck off the scales and continued at a slow speed in a northeasterly direction toward the crossing. As the decedent's truck left the scales, a train operated by the defendant railroad was approaching the crossing from the south at a speed, as shown by the evidence, of approximately 16 to 18 miles per hour. The evidence showed that the train's headlight was burning as it approached the crossing but there was conflicting testimony as to when and where the whistle or bell on the train's locomotive was sounded. The decedent drove onto the tracks moments before the train reached the crossing. The engine of the train struck the right side of the truck behind the cab and drove the truck sideways down the tracks about three hundred feet before coming to a stop. Marvin West and a passenger in the truck died as a result of the collision.

The complaint asserted liability against the railroad and its employees as an absolute liability for violating W.Va. Code § 31–2–8,[1] for the negligent operation of the train, and for negligence in the design of the crossing. McDonough Company was charged with the negli-

gent design of the plant facilities in relation to the crossing, the negligent design of the crossing, and with liability to the plaintiff arising from the 1926 crossing agreement, to which McDonough Company allegedly was a successor party.

As hereinbefore stated, after completion of the plaintiff's case the district court granted a motion for a verdict in favor of all defendants. The court concluded that the evidence failed to demonstrate any negligence by the McDonough Company as a proximate cause of death. As to the railroad and its employees, the court determined that the crossing was "private" rather than "public"; that the statutory requirement of sounding a bell or whistle at sixty rods (990 feet) away from the crossing did not apply; and that reasonable care was exercised in the operation of the train.[2] Thus, no actionable negligence was found on the part of any of the defendants.

The district court further held that the accident occurred as the result of the contributory negligence of the decedent when he failed to stop and look after leaving the scales.[3] The court concluded that, in the absence of actionable negligence on the part of the defendants, or any of them, and because the accident was the result of the negligence of the

1. This statute provides in pertinent part:

   A bell or steam whistle shall be placed on each locomotive engine, which shall be rung or whistled by the engineer or fireman, at a distance of at least sixty rods from the place where the railroad crosses any public street or highway, and be kept ringing or whistling for a time sufficient to give due notice of the approach of such train before such street or highway is reached . . . .

   W.Va. Code Ann. § 31–2–8 (1966) (originally enacted 1872).

2. W.Va. Code § 31–2–8 requires that a bell or whistle be sounded by locomotives at a distance of at least sixty rods (990 feet) from the place where the railroad tracks cross any public street or highway and liability is imposed upon the railroad for neglect of this duty. When approaching a private crossing, however, the railroad need only exercise reasonable care to avoid injury. *Daugherty v. Baltimore & O. R. R.*, 135 W.Va. 688, 64 S.E.2d 231

(1951). *See also Belcher v. Norfolk & W. Ry.*, 140 W.Va. 848, 87 S.E.2d 616 (1955).

3. The court held the decedent contributorily negligent under W.Va. Code § 17C–12–1(a)(4) which provides in pertinent part:

   (a) Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:

   (4) Any approaching railroad train is plainly visible and is in hazardous proximity to such crossing.

   W.Va. Code Ann. § 17C–12–1(a)(4) (1966) (originally enacted 1951).

decedent in failing to stop as required by statute, the jury should be directed to find in favor of the defendants. We affirm the decision of the district court solely on the basis of its finding of contributory negligence.

■ In West Virginia, questions of contributory negligence are normally questions of law only if the material facts are undisputed and only one inference may be drawn from them by reasonable minds. *Daugherty v. Baltimore & O. R. R.*, 135 W.Va. 688, 701, 64 S.E.2d 231, 240 (1951). The defendants contend that the decedent was contributorily negligent because he failed to stop as required by W.Va. Code § 17C–12–1(a)(4), which, in substance, provides that a person driving a vehicle approaching a railroad crossing shall stop within fifty but not less than fifteen feet from the nearest rail and not proceed until he can do so safely when an approaching train is plainly visible and in hazardous proximity to such crossing.

■ Viewing the evidence presented in the light most favorable to the plaintiff, we perceive no real dispute as to the facts material to a determination of the question of whether the statute, W.Va. Code § 17C–12–1(a)(4), was violated by the decedent. The plaintiff's most favorable evidence shows that the train was visible from the scales when it was approximately eleven hundred feet southeasterly from the crossing. Although, as one approaches the crossing from the scales the curve in the tracks gradually decreases the distance one can see down the tracks, the plaintiff's evidence indicated that the train would have been visible from the crossing when it was five hundred feet away. There is no evidence which supports an inference that one approaching the crossing could not have seen an approaching train which was less than five hundred feet distant from the crossing. There was no evidence to indicate that the train's speed exceeded 18 miles per hour. The plaintiff's expert witness testified that a train moving at 18 miles per hour, at a

distance of five hundred feet, would cover that distance in nineteen seconds. Accepting this evidence, the train would be plainly visible to one approaching this crossing for at least nineteen seconds and it is clear that a driver approaching the crossing would be required to comply with the provisions of W.Va. Code § 17C–12–1(a)(4) and to stop if he were at a distance of fifteen feet or more from the nearest rail of the crossing for any of that period of nineteen seconds.

There was undisputed testimony to support the only reasonable inference which can be drawn from the evidence, i. e., that the truck proceeded continuously as it approached the crossing and did not stop as required by the statute when the approaching train was plainly visible and in hazardous proximity to the crossing.

■ Under the law of West Virginia, a plaintiff who is guilty of acts of negligence which "proximately contribute" to the damage alleged is barred from recovery. *Yates v. Mancari*, 153 W.Va. 350, 168 S.E.2d 746 (1969); *Divita v. Atlantic Trucking Co.*, 129 W.Va. 267, 40 S.E.2d 324 (1946). As applied by the West Virginia courts, the doctrine of contributory negligence requires that the negligence of the plaintiff must "contribute proximately and not indirectly before it becomes a bar to recovery on the part of the plaintiff." *Shaw v. Perfetti*, 147 W.Va. 87, 96, 125 S.E.2d 778, 785 (1962). If a plaintiff is guilty of contributory negligence he cannot recover, even from a defendant whose negligence is the proximate cause of the injury. *Yates, supra*, 153 W.Va. at 363, 168 S.E.2d at 754.

■ It is manifest from the evidence that if the decedent had stopped as required by the statute the collision would not have occurred, and that the failure to observe this duty proximately contributed to the collision which resulted in his death. The decedent's violation of this statute constitutes *prima facie* evidence of negligence. *N.Y.Cent. R.R. v. Casto*, 216 F.2d 604 (4 Cir. 1954); *cf. Snyder v. Baltimore & O. R. R.*, 135 W.Va. 751, 65

S.E.2d 74 (1951). Although the *prima facie* evidence of negligence is rebuttable, the plaintiff offered no evidence which would tend to rebut the inference of negligence. Since the material facts are undisputed and the only reasonable inference which may be drawn is that the decedent was negligent in failing to obey the statute, we agree with the district court that the decedent was contributorily negligent as a matter of law. *Graham v. Wriston*, 146 W.Va. 484, 120 S.E.2d 713 (1961); *Daugherty v. Baltimore & O. R. R.*, 135 W.Va. 688, 64 S.E.2d 231 (1951); *Krodel v. Baltimore & O. R. R.*, 99 W.Va. 374, 128 S.E. 824 (1925);[4] *see Moore v. Skyline Cab, Inc.*, 134 W.Va. 121, 59 S.E.2d 437 (1950).[5]

■ Plaintiff argues that the negligent design of the crossing, and not the decedent's negligence, caused the accident, because the design of the scales and the crossing prevented the driver of a truck of the type which the decedent drove from having a plain view of the tracks as it approached the crossing. The evidence shows that the design of the scales and the road approaching the crossing provided a means of approach to the crossing from the scales which would have given the decedent a clear view of the tracks. To hold that a driver who ignores the safe approach which would have made the train plainly visible to him is absolved of any negligence would emasculate the statutory duty of care imposed on operators of vehicles at rail crossings. In addition, the argument presented by the plaintiff that the decedent satisfied his statutory duty to stop and look when he stopped at the weighing scales within fifty feet of the crossing is equally fallacious. He did not stop at the scales to determine whether it was safe to drive his truck across the railroad track; he was not even in a position to look effectively when his truck was on the scales. Furthermore, the statutory duty imposed on the decedent was that he must stop and not proceed until it was safe to do so whenever a train became plainly visible and in hazardous proximity while he was between fifty and fifteen feet of the nearest rail of the crossing. The plaintiff's own evidence shows that the decedent did not make the required stop.

■ We do not find it necessary to decide whether the crossing was "public" or "private," and thus do not determine the duty of care owed by the railroad. Even assuming that a crossing is a public crossing, and a train approaching that crossing fails to give sufficient warning

---

**4.** The facts in *Krodel* are similar in many respects to the present case. *Krodel*, however, was decided prior to the enactment of W.Va. Code § 17C–12–1(a)(4). Nevertheless, the court found the plaintiff contributorily negligent as a matter of law because she failed to exercise reasonable caution and to stop as she approached the railroad crossing where the collision occurred. The effect of the statute has been to amplify and codify prior case law which recognized that a driver of a vehicle is under an obligation to exercise extreme care in approaching a railroad crossing. *See, e. g., Snyder v. Baltimore & O. R. R.*, 135 W.Va. 751, 65 S.E.2d 74 (1951).

**5.** Although *Moore* did not involve an accident at a railroad crossing, the Supreme Court of West Virginia considered the question of when a plaintiff's violation of a traffic ordinance was contributory negligence as a matter of law. *Moore* arose as a result of a collision between two automobiles. The defendant was violating a city ordinance fixing maximum speed and the plaintiff had violated an ordinance which required him to stop and yield the right-of-way to the defendant's automobile. The Supreme Court of West Virginia recognized that even though the primary negligence of the defendant was established, the plaintiff's negligence resulting from his violation of a traffic ordinance was uncontradicted and the plaintiff's failure to observe this duty "proximately contributed" to the collision. It held that on the evidence presented, the trial court should have given a peremptory instruction to the jury barring plaintiff's recovery. The Court reiterated the established rule that "[w]hen the material facts are undisputed and reasonable men can draw but one conclusion from them, contributory negligence is a question of law for the court." 134 W.Va. at 131, 59 S.E.2d at 443. *See Lewis v. McIntire*, 150 W.Va. 117, 122, 144 S.E.2d 319, 322 (1965), in which the West Virginia court cited and relied upon its prior decision in *Krodel v. Baltimore & O. R. R., supra*, 99 W.Va. 374, 128 S.E. 824 (1925), note 4, *ante*.

as prescribed by W.Va. Code § 31–2–8, relief is denied if the automobile driver is contributorily negligent. *Arrowood v. Norfolk & W. Ry.*, 127 W.Va. 310, 32 S.E.2d 634 (1944); *cf. Yates v. Mancari*, 153 W.Va. 350, 363, 168 S.E.2d 746, 754 (1969).

The plaintiff contends that McDonough is liable for the decedent's death by virtue of the 1926 agreement with the railroad. We find that this agreement purported only to extend indemnification rights to the railroad, and did not address the gravel company's liability to third parties. Therefore, McDonough owed the decedent no special duty of care based upon the 1926 agreement. Furthermore, since the decedent's contributory negligence bars any recovery by the plaintiff against the railroad, McDonough cannot be held liable to the plaintiff through the 1926 agreement.

Accordingly, the judgment of the district court is

*Affirmed.*